TENN–TEX PROPERTIES, A Joint Venture of James P. Atkinson and Robert C.H. Mathews, Jr., Plaintiff/Appellee,

v.

BROWNELL–ELECTRO, INC., and Avnet, Inc., Defendants/Appellants.

Supreme Court of Tennessee,
at Nashville.

Sept. 18, 1989.

W. Ovid Collins, Jr., W. Gregory Miller, Cornelius & Collins, Nashville, for defendants/appellants.

Robert S. Patterson, Eugene N. Bulso, Jr., Boult, Cummings, Conners & Berry, Nashville, for plaintiff/appellee.

## OPINION

O'BRIEN, Justice.

This suit originated in the Chancery Court of Davidson County on a complaint filed by Tenn–Tex Properties and involves a dispute as to the obligations of the parties under a lease agreement. Tenn–Tex, the landlord, sought damages against Brownell Electro, Inc., the tenant, and Avnet, its guarantor, for damages, including rent, taxes, repairs, insurance, interest and attorney's fees, alleging breach of the lease agreement. The defendants counterclaimed against the plaintiff for wrongful termination of the lease agreement and refusal to bargain in good faith. The trial court rendered judgment in favor of the plaintiff against both defendants in the amount of $11,093.32 and assessed costs in accordance with Civ.Proc.Rule 68, based on the prior offer of judgment by defendants in the amount of $40,000.

In a memorandum opinion the trial court made the following pertinent findings of fact:

(1) On 21 May 1973 plaintiff entered into a ten (10) year lease agreement with the defendants, beginning 1 August 1973 and expiring on 31 July 1983. The original demised premises consisted of 7,135 square feet, which was approximately one-fourth of the space in a building owned by plaintiff. The remainder of the building was occupied by other tenants. In 1979, 1980 and 1981 amendments to the lease were executed increas-

ing the square footage leased by defendants as other tenants vacated the premises. The 1981 amendment resulted in defendant's occupying the entire building.

(2) The 1979 and 1980 amendments to the lease agreement provided that the additional space was accepted "as is" in its existing condition, subject to reasonable wear and tear, prior to the effective date of the lease amendment agreement. When Brownell took possession, preexisting damage to the expansion space caused by prior tenants consisted of worn carpeting and floor covering, stains on the floor, holes in the office panelling, missing closet doors, nail holes, damaged and sagging ceiling tiles, a defective bathroom vent and a damaged concrete sidewalk. Brownell was not obligated to repair preexisting damage caused by prior tenants. Plaintiff was obligated to make certain repairs included in an exhibit to the lease amendments but failed to comply with this agreement. The additional space occupied by Brownell in accordance with the 27 October 1981 agreement was taken subject to the same terms and conditions contained in the previous lease amendments.

(3) There were negotiations for renewal of the lease. The parties were unable to agree on a rental rate. There was no agreement for a renewal or extension of the lease beyond its expiration date of 31 July 1983.

(4) On 1 October 1982 Brownell advised Tenn–Tex that it had obtained space elsewhere and would not occupy the lease premises beyond 31 July 1983.

(5) On 12 October 1982 James P. Atkinson, one of the joint owners of Tenn–Tex, submitted a letter to legal counsel for Avnet, itemizing twelve repairs to be performed by Brownell. Subsequently, counsel, on behalf of Brownell, assured Atkinson that Brownell would take care of nine of the twelve repair items. Counsel was of the opinion that the three items excluded were the result of reasonable wear and tear or preexisting damages.

(6) Atkinson had made demands on Brownell for the payment of property taxes which were not delinquent; and made demand for payment of a full year insurance premium on the building which had already been insured by defendants.

(7) On 15 November and 23 November 1982 Brownell moved most of its operations to its new location. On 19 November 1982 Mr. Atkinson addressed correspondence to two real estate agents indicating a plan to relet the property. The court considered these communications additional indications of Atkinson's knowledge that Brownell intended to move from Tenn–Tex property. Brownell did not intend to nor did it desert or vacate the Tenn–Tex building. Although some parts of the building were unoccupied, Brownell left office furniture and inventory in the building, kept the telephone, electric, gas, water and security alarm system in service and the building was kept locked. Brownell's employees checked on the building on a daily basis. Brownell had given notice to Atkinson that it was vacating the premises and had paid the November rent. It later paid rent for the month of December.

(8) On 29 November 1982 counsel for Atkinson advised Avnet by letter that Brownell had vacated the premises and defaulted under paragraph 18 of its lease. Demand was made for remittance of all unpaid rent for the remaining lease term through 31 July 1983.

(9) According to an estimate prepared on 19 January 1983 for James Atkinson the repairs for which Atkinson expected Brownell to pay totalled $22,733.

In his conclusions of law the trial court held:

(1) Brownell was not in default under the lease agreement on 29 November 1982 under the terms of paragraph 8, subparagraph 5 of the lease agreement.

(2) Under the facts found herein there was no intention by Brownell to abandon the lease. Brownell was not in default of the lease on 29 November 1982 the date Atkinson's attorney declared Brownell in default and demanded remittance

of all unpaid rent for the remaining lease term. Tenn–Tex's actions in wrongfully declaring a default and demanding an acceleration of the remaining payments amounted to a termination of the lease and a constructive reentry.

(3) Tenn–Tex was not entitled to an award of rent, penalty and interest sought in the complaint since it wrongfully terminated the lease. Further, Tenn–Tex failed to mitigate its damages concerning the rent by attempting to relet the premises for $3.00 per square foot rather than recouping the $2.16 per square foot which would have been received under the lease.

(4) The evidence showed that Brownell and Avnet complied with the provisions of the lease in reference to insuring the building at all relevant times under Avnet's blanket all-risk policy. A claim for insurance premiums in the amount of $1,780.57 was denied.

(5) Tenn–Tex was entitled to a judgment in the sum of $5,160 for repairs in accordance with Collective Exhibit 33. The remaining repair cost claimed by Tenn–Tex related to preexisting damages, damages occurring after Brownell removed from the premises, or as the result of reasonable wear and tear.

(6) Plaintiffs were not entitled to recover attorneys fees under paragraph 19 of the lease because there was no breach or default by defendants.

(7) The court found that an offer of judgment had been made by defendants on 4 November 1983 in the amount of $40,000 and assessed costs in accordance with Tennessee Rule of Civil Procedure 68.

The memorandum opinion was incorporated into the court's final judgment awarding plaintiffs recovery against defendants in the sum of $5,099.32 for taxes accrued during the first eleven months of 1982; the sum of $5,160 for repairs to the lease premises; making a total judgment of $11,093.32. All other claims of both parties under their respective pleadings were denied.

The issues raised in the Court of Appeals by the plaintiff asserted that Brownell Electro, Inc. breached its lease agreement by substantially vacating the premises of the office warehouse owned by Tenn–Tex Properties; that the lease agreement between Tenn–Tex and Brownell Electro was never terminated; that Tenn–Tex was entitled to recover rent through the term of the lease, plus late charges, taxes, insurance and attorney's fees.

The Court of Appeals found that plaintiff had not demonstrated to the Court that the disposition of the appeal would be effected by a resolution of the first issue and pretermitted it as being moot.

As to the insistence that the lease agreement between the parties was never terminated, the court reviewed the evidence, discussed various authorities and concluded that the lease was not terminated prior to its expiration by its own terms on 31 July 1983.

They held that the defendants were liable to the plaintiff for monthly rental installments through the term of the lease, plus five percent (5%) "late penalty" and interest at the rate of ten percent (10%) from the due date of each rent installment to the date of entry of judgment. They held that plaintiff was entitled to recover the taxes due for 1982 and seven-twelfths of the 1983 taxes, in the total sum of $8,807.93, plus interest. That plaintiff was entitled to recover a pro rata share of insurance premiums paid, plus interest, and remanded for further proof on an award of reasonable attorney fees.

■ Our scope of review is governed by Tennessee Rule of Appellate Procedure 13(d) and unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn.1984); *Foster v. Bue,* 749 S.W.2d 736, 741 (Tenn.1988). Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstanc-

es. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987). Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses. *Royal Insurance Co. v. Alliance Insurance Co.*, 690 S.W.2d 541, 543 (Tenn.App.1985).

The first issue presented to this Court urges that the Court of Appeals erred in ruling that Tenn–Tex, the plaintiff/landlord, had no duty to mitigate damages for unpaid rent.

The ruling of the trial court on this issue has been noted heretofore.

The Court of Appeals did not expressly hold that Tenn–Tex had no duty to mitigate damages. They did find, on their interpretation of the evidence, that there was no evidence in the record that Tenn–Tex ever demanded possession from the tenant, evicted or attempted to evict the tenant by force or law. They held there was no constructive eviction or any surrender of the premises by defendants, therefore the issue of duty to re-rent was moot because there was no evidence of an unconditional surrender by the tenant.

Apparently the parties to this lease agreement operated amicably under its terms for nearly nine years of its operation. During that time there were three amendments to the lease, each expanding the area within the leased premises occupied by the defendant Brownell. In early 1982 Brownell and Tenn–Tex began negotiations for renewal of the lease. These negotiations went on for a period of several months without any effective agreement between the parties. Finally, on 1 October 1982 an officer of Brownell advised James Atkinson that the company would not be renewing its lease and that it had leased other space to which it would be moving. Immediately after this notice a growing friction began between the parties, initiated by James Atkinson. In a conversation between him and Frank Spiegel, Vice–President of Brownell, Atkinson called to his attention that Brownell was obligated to make certain repairs and if they were not done promptly the consequence would be legal action. The tenor of this conversation was reported to Avnet's legal counsel, David Birk, who communicated by letter with Mr. Atkinson advising him that Brownell intended to abide by the terms of the lease and expected him to do the same. The letter requested an itemization of proposed repairs in accordance with the lease and concluded with the suggestion that it would be to the mutual advantage and profit of the parties to reach an amicable resolution. Mr. Atkinson replied in short order, advising he inspected the premises on 22 April 1982 and on 20 September 1982 and found a series of twelve items which he believed were the tenant's obligation to repair under the lease terms. He further stated as an alternative he would have estimates prepared for the above work which should be completed as soon as possible to avoid further deterioration [to the building]. Mr. Birk responded in turn, advising they were reviewing the items set forth in the list submitted by Atkinson, and requesting the estimates pursuant to the offer made in the Atkinson letter of 12 October. The letter concluded with the assurance that Brownell and Avnet had every intention to abide by the terms of the lease with respect to maintenance and repairs which were the tenant's responsibility.

Apparently the next communication was by telephone from Atkinson to Birk in which he explained that he would not comply with his offer to furnish estimates unless Brownell agreed beforehand to pay for all of the items of repair and maintenance listed in his prior correspondence at its cost and expense. It should be noted that Avnet's house counsel was officed in New York City. Counsel responded once more by letter, saying they were seeking advice of a professional contractor to determine if the listed repairs were in fact necessary and the nature and extent of the repairs or maintenance that should be undertaken as Brownell's responsibility. The letter indicated a conflict was emerging over which of the parties should communicate with the

other in obtaining the necessary professional advice and estimates for the repairs. There was also a suggestion that Mr. Robert Mathews the joint owner of Tenn–Tex, who had not previously engaged in the controversy, was insisting that all of the repair work be completed within a twenty-day time period. This was confirmed in a communication from Atkinson to Brownell's manager in Nashville on 29 October 1982 inquiring about the progress of the repairs to be done to the premises. The manager informed him they were proceeding with those items which did not require estimates. He said Birk had advised him there were ongoing discussions between him and Mr. Atkinson in reference to those. Atkinson informed him they were allowing twenty days under the terms of the lease to make the repairs. He also gave the Nashville manager the names of three contractors. Avnet's counsel immediately wrote to Atkinson advising they would contact those contractors at once and ask them to review the items listed in the letter of October 12. As soon as this was accomplished they would advise Mr. Atkinson further.

The next communication appears to be on 10 November by telephone, followed by a letter from David Birk to Mr. Atkinson. Birk advised they had not been able to contact the contractors whose names had been provided by Atkinson. Two of them had not responded to calls placed with their answering service and the third had inspected the premises but had not responded with an estimate. He advised that Brownell would, as soon as practicable, complete all the repairs on Mr. Atkinson's list with the exception of some gravel guards which apparently did not need repair, some rust discoloration on the outside of the building which was caused by a prior tenant and some exterior painting which they considered to be ordinary wear and tear and not the tenant's responsibility. He requested further discussion of the matter between the parties. The letter reflected that Mr. Atkinson, in the telephone conversation, had seemed to be highly incensed. He had expressed an intent to initiate a three-day eviction proceeding,

place a lien on the equipment and property of Brownell, bring his own contractor on the premises, charge double for the work and sue Brownell and Avnet for damages. This letter was followed by another dated 18 November, advising Mr. Atkinson that the work had commenced in conjunction with the former communication and it was anticipated would be completed within the next couple of weeks.

On 12 November 1982 Mr. Atkinson wrote to the president of Brownell Electro, Inc. at their New York address, informing him that in accordance with the lease agreement he was enclosing a copy of a 1982 real property tax statement from the Metropolitan Government of Nashville, covering the leased premises in the amount of $5,562.90 and requesting payment, since the taxes were then due and payable. The letter concluded that any sums not paid would be deemed to be additional rent owned by the tenant, bearing interest at the rate of ten percent (10%) per annum from the date of demand to date of payment. A similar letter of the same date enclosed an invoice for insurance, dated 27 October 1982, in the amount of $1,886 for fire and extended coverage on the leased premises for the next ensuing year. The letter requested payment of that amount, advising Brownell that its pro rata share of unearned premium would be reimbursed upon expiration of the lease. On 19 November 1982 Mr. Atkinson had approached two rental agents in reference to reletting the premises. His correspondence to each indicated he had not received official notice that Brownell was moving but that the property would be available upon resolving legal problems and its vacancy. The lease price was stated to be in the $3.00 per square foot range, NET, with tenant to pay all real estate taxes, insurance and maintenance. On the strength of Atkinson's communication one of these brokers began searching for prospects for immediate occupancy at the proposed rate of $3.00 per square foot, absolute NET.

On 29 November 1982 counsel for plaintiff communicated with defendants' New York counsel, advising that it had come to

his attention Brownell had vacated the premises in violation of their lease agreement with Tenn–Tex and that this action constituted default under the terms of their lease.

By this time things had reached the state where local counsel had been employed by both parties and a flurry of communication commenced between them.

There is evidence that sometime prior to 29 December 1982 defendant's counsel endeavored to turn over the keys to the premises to counsel for the plaintiffs. It was agreed the keys would be accepted without a waiver of any claims their clients might have under the lease. Their response specifically noted, "obviously we have a duty to mitigate our damages and our accepting the keys ... would be in the nature of mitigation in the preservation of the property." There is also evidence in the record that as early as the first part of December Mr. Atkinson had been advised, by counsel representing him at the time, that he had some obligation to attempt to minimize his damages. In conjunction with that advice Mr. Atkinson had begun listing the property for immediate occupancy.

■ In summary the evidence is clear that for a number of months prior to 1 October 1982 the parties had negotiated unsuccessfully for renewal of the lease agreement for another term. On that date defendants notified Mr. Atkinson that Brownell would not be renewing its lease, that it had leased other space and would be moving in the near future. He was advised that Brownell intended to abide by the terms of the lease and there is no evidence in this record that they ever did otherwise. Upon receiving this information Mr. Atkinson began making demands which became more and more strident and assertive, culminating in the declaration of 29 November 1982, through counsel, that defendants were in default under the terms of the lease. Demand was made for all unpaid rent in the amount of $30,210 as well as acceleration of other payments which were not due under the lease terms. This leads to the ineluctable conclusion that there was a constructive eviction of the tenants by the landlord by virtue of Atkinson's conduct, which amounted to a breach of the covenant for quiet enjoyment.

In *Moe v. Sprankle*, 32 Tenn.App. 33, 221 S.W.2d 712, 715 (1948), the court said: "It is a modern practice to lease property for business purposes for long terms and there occurs to us no reason why a lessee, after establishing his business on the leased premises, should be forced to await eviction by the lessor or surrender the premises, often at great loss, before claiming a breach of the covenant for interference with his use and possession of the premises falling short of total eviction. It is true, of course, that the lessee has his action at law for trespass. But such an action presupposes negligence while an action on the covenant is based upon a violation of the obligation not to disturb the tenant in the use or occupancy of the premises. Since, as held in *Weinstein v. Barrasso* [139 Tenn. 593, 202 S.W. 920 (1918)], supra, the tenant cannot avoid the payment of rent so long as he retains possession, to hold otherwise would in effect force the tenant either to surrender his possession or lose the benefit of the covenant and be relegated to an action of trespass."

This Court said unequivocally in *Couch v. Hall*, 412 S.W.2d 635, 637, 219 Tenn. 616 (1967) that a covenant of quiet enjoyment protects the lessee from any act of the lessor which destroys the quiet and beneficial enjoyment of the use of the property.

A constructive eviction may arise from the improper conduct of the landlord in interfering with the beneficial enjoyment of the premises by threats of expulsion, attempts to lease to others, or unreasonable demands, insults, or assaults. Such matters, however, in order to constitute a constructive eviction, must substantially interfere with the tenant's beneficial enjoyment of the premises, and the interference must be of a permanent nature. 52 C.J.S., Landlord and Tenant, Sec. 458, p. 315.

We are of the opinion that there was a sincere attempt on the part of defendants to surrender the premises to the plaintiff. The rent on the building was paid in No-

vember and for the month of December. Nonetheless, whether or not the actions of the plaintiff in this case constituted a material or substantial impairment or interference with defendants' beneficial use of the premises was a question of fact for the trial judge, as was the matter of surrender. See *Couch v. Hall,* supra 412 S.W.2d at p. 638.

As to the matter of mitigation, the constructive eviction of the tenant by the landlord renders that issue moot.

Plaintiffs made demand on defendants for payment of a full year insurance premium covering fire and extended coverage in the amount of $1,886. The trial court denied the claim for insurance premiums on the basis that defendants had complied with the provisions of the lease by insuring the building at all relevant times under a blanket all-risk policy. The Court of Appeals reversed this judgment and awarded a pro rata portion of the insurance premium for the period 2 October 1982 through 31 July 1983 in the amount of $1,780.57 plus ten percent (10%) interest from 2 October 1982 to date of judgment.

■ The lease agreement, in pertinent part, provided the tenant would keep the premises secured against loss or damage by fire with extended coverage insurance. The policies were to provide for payment of loss to the landlord, and others, and be delivered to the landlord if requested. Brownell took occupancy of the entire building on 27 October 1981. Prior to that time Tenn–Tex procured insurance and prorated the insurance premium on the property in accordance with the portion of the building occupied by its various tenants. On 13 November 1981 defendants addressed a letter to James Atkinson noting they had received a copy of the insurance invoice on the building with a premium of $1,828.02. They advised that since they had occupied the entire premises they elected to insure the property under their own policy because the one hundred percent (100%) replacement value of the building could be insured for an annual premium charge of approximately $250 under Avnet's blanket policy. They stated they

would have their carrier add the building to their policy as of 1 November 1981 and provide Tenn–Tex with a certificate sent to Atkinson's attention. No request was ever made for delivery of a copy of the policy by Tenn–Tex in accordance with the lease terms. On 12 November 1982 Mr. Atkinson made demand for the payment of the annual insurance premium for a policy of insurance he had taken on the property for a term extending until October 1983. We agree with the chancellor that the evidence shows defendants complied with the provisions of the lease by having the building insured at all relevant times under Avnet's blanket all-risk policy.

The chancellor found that Tenn–Tex was entitled to a judgment for property tax payments for eleven-twelfths of the 1982 taxes in the amount of $5,099.32. Based on their determination that the lease did not expire until 31 July 1983 the Court of Appeals awarded $8,807.93 in taxes for the entire year of 1982 plus seven-twelfths of the 1983 taxes. They added interest at ten percent (10%) on the 1982 taxes in the amount of $5,562.90.

The trial court found there was no breach or default on behalf of the defendant and denied the recovery of attorney fees. The Court of Appeals directed the payment of attorneys fees under the terms of the lease.

Based on our conclusion that the trial court reached the correct result in finding that plaintiffs' actions brought about a termination of the lease, and in each of his resultant findings, we concur in his judgment in its entirety.

The judgment of the Court of Appeals is reversed insofar as it directs payment of any amounts in excess of those set by the trial court. The trial court's judgment is reinstated directing recovery by Tenn–Tex in the total amount of $11,093.32 in accordance with that court's decree. The case is remanded for such further proceedings as may be required. The costs of this appeal are taxed jointly and equally to each of the parties.

FONES, COOPER and HARBISON, JJ., concur.

DROWOTA, C.J., not participating.

ORDER ON PETITION TO REHEAR

Plaintiff has filed a Petition to Rehear asserting that the Court overlooked certain evidentiary matters relative to defendants' continued occupancy of the demised premises after constructive eviction by the landlord.

Upon re-examination of the evidence and the issue raised the Court adheres to the conclusion reached in the Opinion.