IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## DORIS KAY ROBISON ASHBY v. JERRY DONALD ASHBY

**Direct Appeal from the Chancery Court for Carroll County**
**No. 97DR145   J. Walton West and Ron E. Harmon, Chancellors**

---

**No. W1999-02160-COA-R3-CV - Decided June 6, 2000**

---

This is a divorce case.  The trial court found that the husband had kept a large sum of cash in the marital home, found it to be marital property and awarded the wife a portion of it.  The parties lived in a home given to them by the husband's mother; the trial court awarded the wife half of the value of it.  The husband appeals the trial court's award of a portion of the cash, as well as the valuation and division of the home. We affirm, finding that there is evidence in the record sufficient to support the trial court's findings.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Laura A. Keeton, Huntingdon, Tennessee, for the Appellant, Jerry Donald Ashby.

Doris Kay Robison Ashby, Appellee, Pro Se (made no appearance)

### Opinion

After living together for several years, Plaintiff/Appellee Doris Robison Ashby ("Wife"), and Defendant/Appellant Jerry Donald Ashby ("Husband") married on October 3, 1995.  It was Husband's third marriage,  and Wife's fourth.

After the marriage, the parties moved into a farm house owned by Husband's mother, Jacqueline Fry Mertz ("Mertz"), which was located on land in Carroll County that had been in Mertz's family for several generations.  Mertz lived in a separate house nearby, located on the same land. On February 15, 1996, Mertz deeded the house, along with approximately three acres of land, to Husband and Wife as tenants by the entirety.  When Husband and Wife received the house, it was in a state of extreme disrepair, having been unoccupied and neglected for a number of years. Husband and Wife worked together to refurbish and renovate the house.  They jacked it up to level the floors, repaired the roof, installed siding on the outside walls, painted inside walls, cabinets and ceilings, installed new counter tops and cabinets in the kitchen, tore out and replaced all of the floorboards in the bathroom and half of those in the kitchen, and laid new linoleum over floors in

four of the rooms. The parties also moved to the property a work shop that belonged to Wife. They affixed the shop to the ground, added doors and windows, and doubled its square footage. Wife operated an upholstery business from this shop. Husband bought, repaired and sold used cars, working out of a detached garage located on the property.

Wife later moved out of the home. She filed for divorce on July 10, 1997, alleging cruel and inhuman treatment and irreconcilable differences. Husband filed an answer and counter-complaint on December 15, 1997, alleging that Wife was guilty of adultery and inappropriate marital conduct.

At the February 26, 1998 trial, Wife testified that she and Husband had pooled their savings, which they kept, in cash, in a fireproof lock box hidden "around" an upstairs chimney in their home. Wife alleged that the cash totaled $130,000 and that Husband still had the cash in the marital home. As proof, Wife introduced into evidence a photograph purporting to show stacks of $100 bills, laid out on a bed. Wife stated that, after the parties' relationship began to deteriorate, she had uncovered the cash, counted and photographed it, and then returned it to its hiding place. No one was with her when she counted the money, and no one else saw the cash.

Wife's sister, Vicky Gail Traywick, testified that in April or May of 1997, during a conversation with Husband and Wife at their home, Husband told her that he did not believe in buying on credit, and did not trust banks, and that he and Wife kept their money in cash hidden in their home. She could not remember the amount of money Husband mentioned, but remembered that it was a large sum, testifying "I seem to remember thousands of dollars, but a large sum, but 90 or a hundred and thirty or – I remember thinking it was a very large amount, but I couldn't tell you the – just the exact amount." Another of Wife's sisters, Brenda Towater, testified that Wife had told her that Husband had a lot of cash that was not in a bank, but instead hidden somewhere.

Husband adamantly denied that he and Wife had pooled their savings, or that he ever had $130,000 in cash. Husband said that if he had ever told anyone he had a large amount of cash hidden in the house, "it was a lie." Husband admitted that he and Wife had a joint checking account, which Wife used to pay bills.

Wife introduced into evidence a tape recording of a telephone conversation between the parties regarding the cash that took place after their separation. The tape was difficult to hear, and the trial court ordered that the court reporter attempt to transcribe it. On March 9, 1998 the trial court granted Husband and Wife a divorce upon the stipulation that each party had grounds for divorce against the other. The case was continued to May 1, 1998, in order to appraise the parties' house, and to allow time for the court reporter to transcribe the tape.

At the May 1, 1998 hearing, the transcript of the tape was introduced into evidence:

> Mrs. Ashby: I got some pictures of something of yours too.
> Mr. Ashby: I don't care.
> Mrs. Ashby: You don't care? That's all right.

Mr. Ashby: I don't care.

Mrs. Ashby: He really enjoyed that picture of that $130,000.

Mr. Ashby: Huh?

Mrs. Ashby: That whore you're living with, if you ever leave the house, you better take your damn money with you because, by God, you won't have it when you get back.

Mr. Ashby: By God, I did because if I – if I left it here, by God, you was trying to relieve me of it, wasn't you?

Mrs. Ashby: Then how come I opened it and took a – spread it out and took a picture of it right on your quilt then took a picture of your quilt that your mother bought you? Why didn't I take the money then, huh?

Mr. Ashby: I don't know why. Why didn't you?

Mrs. Ashby: Why didn't I? Because I'm not – I'm honest. I tried to do what was right.

Mr. Ashby: That's good – (inaudible)

Mrs. Ashby: How much have you got left of it? Has the old witch relieved you of it?

Mr. Ashby: Me and her's spending that shit fast as we can get (sic). We – we–

The appraisers hired by Husband and Wife testified at the May 1 hearing. Wife's appraiser, Alicia Collins Templeton, ("Templeton"), from Jackson, Tennessee, stated that in her opinion the fair market value of the property was $42,000. Templeton stated that she had included the value of the upholstery shop in the property's fair market value, but not the garage or other out buildings. Templeton assigned a $12,000 value to the upholstery shop, based on its replacement cost.

Husband's appraiser was Lynn Taylor ("Taylor"), from Carroll County, Tennessee. Taylor assigned a fair market value of $22,500 to the property. Taylor disagreed with Templeton's valuation of the upholstery shop. Taylor acknowledged that the cost to replace the shop might be $12,000, but testified that the shop only minimally increased the overall fair market value of the property. Taylor opined that the upholstery shop added a value of $1,092 to the property.

On June 30, 1998, the trial court issued its findings of fact and conclusions of law. The trial court valued the real property at $32,000. It awarded the house to Husband, and awarded Wife one-half of its value. Wife was awarded one-half the rental value of the marital property for the time that Husband had occupied the property. The trial court awarded no alimony to Wife. With respect to the cash that Wife alleged was kept in the home, the trial court wrote:

It is claimed by the wife that the parties have accumulated $130,000 in cash which was kept by the husband at the marital residence. The evidence supports the conclusion that a large sum of cash was kept at the residence.

The Court has no way to determine what amount of the cash kept at the residence was earned prior to the marriage and what amount was earned after the

3

marriage. How much of the cash represents a marital asset and how much represents premarital separate assets of the parties? No reliable evidence was presented on the issue.

　　　　While arguably arbitrary, upon review of all the evidence, the Court finds that the wife is entitled to $40,000 of the cash money kept by the parties at the residence.

On August 28, 1998 the trial court granted Wife a lien against the marital home of $57,982.00, the total amount of Wife's property award. From this entry of judgment, Husband now appeals.

On appeal, Husband raises the issue of whether the trial court erred in awarding Wife $40,000, based on its finding that Husband kept a large amount of cash in the house. Husband also argues that the trial court erred in its valuation and division of the marital home. Wife did not submit a brief on appeal.

Husband first argues that the trial court erred by awarding $40,000 to Wife. Husband asserts that there was no credible evidence to support Wife's allegation that the $130,000 in cash ever existed. Husband also contends that no reliable evidence was presented on whether the alleged large sum of money was marital property and contends that the trial court's award to Wife was arbitrary, unsupported by any facts.

The trial court's finding that a large sum of cash existed is a finding of fact. We review the trial court's findings of fact *de novo* on the record, accompanied by a presumption of correctness, unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13 (d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We accord the trial court's determinations on the credibility of witnesses great weight on appeal. *Tenn-Tex Properties v. Brownell Electro*, 778 S.W.2d 423, 426 (Tenn. 1989). We will not, therefore, disturb the trial court's finding of credibility unless there is clear error. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998).

At trial, Wife testified that the parties kept a large sum of cash in the home. She stated that, at the end of the marriage, she counted the money and found that it totaled $130,000. Wife introduced into evidence a photograph of the money, and a tape recording of a conversation in which the parties referred to the money. In addition, Wife's sister, Gail Traywick, testified that Husband told her that he and Wife kept their money hidden in their home. In his testimony, Husband denied that he and Wife had ever pooled their money, or that he had ever had $130,000 in cash hidden in the home. The trial court apparently credited Wife's testimony as to the hidden cash. With due deference to the trial court's determinations of credibility, we find that the evidence does not preponderate against the trial court's findings of fact on the existence of the cash.

Husband also argues that the trial court's award to Wife of $40,000 was arbitrary and capricious, since no reliable evidence was presented on how much of the cash was marital versus separate property.

The trial court is vested with wide discretion in its classification of property in a divorce, and its decision to classify the parties' property as either marital or separate is given great weight on appeal. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998)(citations omitted); *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). A similar weight is accorded the trial court's division of the property it has classified as marital. *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997)(citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994) and *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996)(citing *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991)). The trial court's classification and division of property is presumed to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13 (d); *Dunlap*, 996 S.W.2d at 814; *Dellinger*, 958 S.W.2d at 780.

Husband offered no evidence to show that the money was his separate property, since he maintained that the cash never existed. No evidence was presented of the amount of savings, if any, brought to the marriage. Wife testified that the parties pooled their money and indicated that the cash represented the pooled savings of the parties during the duration of the relationship. Based on the evidence in the record, we are unable to conclude that the trial court abused its discretion in awarding Wife $40,000 of the large sum of cash it found remained in the marital home. The trial court's decision on this issue is affirmed.

Husband next argues that the trial court erred in its valuation of the marital home and in awarding Wife half of its value. Husband maintains that the trial court erred in valuing the house at $32,000. Husband asserts that the trial court should have given his appraisal more weight than Wife's appraisal because his appraiser, who was from Carroll County, was more knowledgeable about property values in Carroll County than was Wife's appraiser.

Questions regarding the qualifications of expert testimony are within the discretion of the trial court. *See McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997); *Buchanan v. Harris*, 902 S.W.2d 941, 945 (Tenn. Ct. App. 1995). Wife's property appraiser, although not from Carroll County, testified that she was familiar with property in Carroll County, and had performed appraisals there before. There was no error in admitting her testimony. The weight given to Wife's appraisal was within the discretion of the trial court, as the trier of fact. *See State v. Anderson*, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994).

Wife's appraiser valued the property at $42,000, while Husband's appraiser valued it at $22,500. The trial court chose a value of $32,000, approximately mid-way between the two values. We find no error in the trial court's valuation of the property.

Husband argues that the trial court's award of one-half the value of the home to Wife is inequitable, since the parties were married for less than two years and the home was a gift from Husband's mother. Husband contends that the labor Wife contributed to remodel the home does not entitle her to half of its value.

At trial, there was extensive evidence of the state of disrepair of the house when the parties moved into it. Wife testified at length about her role in renovating the house. Husband discounted Wife's contribution, testifying that "she didn't do anything but a little painting." The trial court apparently credited Wife's testimony on this issue as well, and the trial court's determinations of credibility are accorded great deference on appeal. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998); *Wright-Miller v. Miller*, 984 S.W.2d 936, 942 (Tenn. Ct. App. 1998)(quoting *Tenn-Tex Properties v. Brownell Electro.*, 778 S.W.2d 423, 426 (Tenn. 1989)). In addition, Wife also contributed to the property her upholstery workshop, which was placed on a permanent foundation. Both appraisers agreed that the workshop increased the property's value, although they disagreed on the amount. Overall, with due deference to the trial court's determinations of credibility, we cannot find that evidence preponderates against the trial court's division of the marital home. *See Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997).

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellant, Jerry Donald Ashby, for which execution may issue if necessary.

**HOLLY KIRBY LILLARD, J.**
**W. FRANK CRAWFORD, P. J., W.S.**
**ALAN E. HIGHERS, J.**