HEIDI MARLIES SOMMERVILLE )
(CALUGER) and )
GERICKE SOMMERVILLE, )
)
    Plaintiffs/Appellants, )      Appeal No.
)      01-A-01-9710-CV-00559
v. )
)      Sumner Circuit
JERRY WILLIAM SOMMERVILLE, )      No. 11917-C
)
    Defendant/Appellee. )

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT OF SUMNER COUNTY,

AT GALLATIN, TENNESSEE


THE HONORABLE THOMAS GOODALL, JUDGE


RANDLE W. HILL, JR.
329 Union Street
P. O. Box 19632
Nashville, Tennessee  37219-0632
    ATTORNEY FOR PLAINTIFFS/APPELLANTS



BRUCE N. OLDHAM
SUE HYNDS DUNNING
Oldham & Dunning
109 Public Square
Gallatin, Tennessee  37066
    ATTORNEYS FOR DEFENDANT/APPELLEE




AFFIRMED AS MODIFIED,
AND REMANDED




WILLIAM B. CAIN, JUDGE

# O P I N I O N

This appeal presents another chapter in continuing domestic litigation not likely to end with this appeal.

Jerry Sommerville ("Mr. Sommerville" or "Appellee") and Heidi Sommerville (now Caluger) ("Ms. Caluger" or "Appellant") are the parents of two daughters, Gericke Sommerville and Kara Sommerville. The parties entered into a Marital Dissolution Agreement on February 12, 1994 which was incorporated into a Final Decree of Divorce entered March 14, 1994. The decree provided that the Mother would have custody of the parties' youngest daughter Kara with visitation set for the Father. The older child, Gericke, was already emancipated at the time of the divorce and attending college. Jerry Sommerville was to pay $886.00 per month child support for the minor child Kara.

Included in the Marital Dissolution Agreement was a provision relative to post-secondary education for both of the daughters.

This provision stated:

15. Both parties acknowledge and agree that each shall be responsible for payment of one-half of the post-secondary education or college tuition and related expenses equivalent to an in-school tuition, so long as the child shall maintain a "C" or better grade point average or its equivalent and be taking at least one half of a full-time credit load, making the normally scheduled progress for receiving their baccalau[a]reate degree, diploma or certificate of completion of the program and so long as the child has not married. Wife's contributions to the post-secondary education may be "in-kind" by providing shelter, food and clothing to the child or children. If either child fails to maintain the foregoing conditions during majority, then payment shall cease. Should the child cease attending school or college for two consecutive semesters, or one calendar year, with the exception of a medically necessitated absence, neither parent shall be liable for further payments for college expenses. Husband's obli-gations as to both children's post secondary education shall not exceed a maximum of $6,000.00 per year, (or $500.00 per month) beginning March 1, 1994. In the event that the Wife shall re-marry Husband's aggregate obligation to provide for the post-secondary education of the two children of this marriage shall be $10,000.00 per year (or $834.00 per month).

The parties acknowledged that the $886.00 per month child support for Kara was set in accordance with Tennessee Department of Human Services' Child Support Guidelines.

Such tranquility as may have been produced by the Marital Dissolution Agreement was short lived and on September 9, 1994, Mr. Somerville filed a petition to terminate his alimony obligations pursuant to Tennessee Code Annotated section 36-5-101(a)(3). By order of November 28, 1994, the trial court terminated his alimony obligation and Ms. Caluger promptly appealed with the judgment of the trial court being affirmed in *Sommerville v. Sommerville*, No. 01-A-01-9502-CV-00070, 1995 WL 498743 (Tenn. App. 1995), and the case being remanded to the trial court. Pursuant to this remand on March 8, 1996, the trial court granted judgment for attorney fees against Ms. Caluger in the amount of $4,248.38.

While the alimony question was pending on appeal, the parties could not agree on the meaning of section 15 of the Marital Dissolution Agreement, and in April, 1995 Mr. Sommerville filed a petition asking the trial court for declaratory judgment as to these obligations. This portion of the problems between the parties was resolved by an Agreed Order entered May 14, 1996, amending the Marital Dissolution Agreement so that paragraph 15 thereof, as amended, provides:

> 3. That Paragraph 15 of the final Decree of Divorce shall be amended as follows: 15. Both parties acknowledge and agree that each shall be responsible for payment of one-half of the post-secondary education or college tuition and related expenses equivalent to an in-school tuition, so long as the child shall maintain a "C" or better grade point average or its equivalent and be taking at least one half of a full-time credit load, making the normally scheduled progress for receiving their baccalaureate degree, diploma or certificate of completion of the program and so long as the child has not married. Wife's contributions to the post-secondary educa-tion may be "in-kind" by providing shelter, food and clothing to the child or children. If either child fails to maintain the foregoing conditions during majority, then payment shall cease. Should the child cease attending school or college for two consecutive semesters, or one calendar year, with the exception of a medically necessitated absence, neither parent shall be liable for further payments for college expenses. Husband's obligations as to both children's post secondary education shall not exceed a maximum of $6,000.00 per year, (or $500.00 per month) beginning

March 1, 1994. In the event that the Wife shall remarry Husband's aggregate obligation to provide for the post-secondary education of the two children of this marriage shall be $10,000.00 per year (or $834.00 per month).

Either the child attending college or the Wife shall provide to Husband documentation at the beginning of each semester/quarter of the child's attendance, courses enrolled and costs of tuition and related expenses within thirty days of the beginning of the semester/quarter. At the close of each semester/quarter, either the child or the Wife shall submit a copy of the report of courses completed and grades achieved within thirty days from the last day of the semester/quarter. Husband shall have thirty days after receipt of the course report to reimburse his portion as described above. Reimbursement may be made to the institution so long as the child will attend such institution for the next semester/quarter, or to the child, if the child has provided the Husband with proof that she has already paid the institution for the semester/quarter previous and has completed the course of study at that institution. Failure to present the required information within sixty days of date due shall constitute a waiver of claim for payment.

On September 30, 1996, Ms. Caluger filed a petition to increase child support because of changed circumstances and the failure of Mr. Sommerville to exercise visitation. In the following month Ms. Caluger, along with the parties' adult child, Gericke Sommerville, filed a petition relative to the amended paragraph 15 of the Marital Dissolution Agreement and college expenses. The case was heard by the trial judge on July 2, 1997, and on September 2, 1997 the trial court entered its findings of fact and conclusions of law and an order in conformity therewith. Ms. Caluger and Gericke Sommerville appealed.

I.    THE CHILD SUPPORT ISSUE

The issue of child support deals only with the daughter Kara, who reached 18 years of age on February 27, 1997 and graduated from high school on May 23, 1997. Any increase of child support is thus limited to the period between the filing of the petition to modify on September 30, 1996 and the graduation of Kara from high school on May 23, 1997.

The trial court held:

3.    Although SOMMERVILLE'S present "draw" is more than his prior income, his Employment Contract requires that he pay back to his employer all draws in excess of actual commissions.

By affidavit of his employer (Exhibit #9), SOMMERVILLE actually earned $65,298.99 ($5,441.58 per month) in 1996. He has earned $38,487.52 through the 30th of June, 1997 for the year 1997, which computes to $5,747.92 per month. His present income is less than the income upon which the original support obligation was based. SOMMERVILLE has not asked for a reduction in child support and this difference in income would not be sufficient to constitute a "substantial variance" in any case.

4.    No increase in child support is warranted based solely upon the income of SOMMERVILLE.

5.    Subsequent to the entry of the Final Decree of Divorce, SOMMERVILLE did not exercise all of the visitation which had been provided for him in the Decree, which was one weekend a month, six weeks in the summer and certain holiday times. However, the minor child, KARA SOMMERVILLE, testified that she did not always want to go for visitation as a result of her animosity toward her father as a result of the divorce action and CALUGER testified that she had canceled a plane trip for KARA to see SOMMERVILLE in Ohio due to a family emergency for which SOMMERVILLE had sent a non-refundable ticket. The Final Decree provided that if "*either the child or the Husband are not available for visitation for at least one weekend per month, make-up time shall be scheduled during the child's Christmas, Spring Break or summer school breaks.*" However, no make up time was made available to SOMMERVILLE.

6.    CALUGER produced an exhibit at trial setting forth her position as to entitlement to increased support as a result of lack of visitation, but testified that she did not actually incur significant costs as a result of the lack of visitation.

7.    There being no summer visitation between the months of October, 1996 and May, 1997, CALUGER is entitled to the sum of $100.00 per month for the missed visitation, resulting in a judgment against SOMMERVILLE for the sum of $800.00.

Review in this case under Rule 13(d) of the Tennessee Rules of Appellate Procedure is *de novo*, accompanied by a presumption of correctness as to the trial court's findings of fact unless the evidence preponderates to the contrary. *Lancaster v. Lancaster,* 671 S.W.2d 501, 502 (Tenn. App. 1984). As to the findings of fact upon which the trial court set a $100.00 per month increase in child support for the eight month period because of missed visitation, the evidence does not preponderate against the trial court findings.

We think the trial court erred, however, in considering the "draw deficit" under the "Jerry Sommerville Employment Contract" as having the effect of reducing what otherwise would be gross income. He receives a monthly draw

of $7,000.00 per month, all of which is reported as taxable income, with no deduction for draw deficit. Pursuant to the child support guidelines, child support based on $7,000.00 per month should be $1,029.00 as opposed to the $886.00 per month paid under the original judgment. Tenn. Comp. R. & Reg. r. 1240-2-4-.02(3) (1994). This amounts to an increase of $143.00 per month for a period of eight months totaling $1,144.00. When coupled with the $800.00 increase, caused by missed visitation, the total judgment for child support should be $1,944.00.

Appellant Caluger contends that the trial court erred by not considering the Father's income from his previous employer, the Stolle Corporation. Jerry Somerville testified that his employment at the Stolle Corporation ended in February, 1996. The Mother did not file her petition until September 30, 1996, and by her own testimony she is seeking a retroactive increase in child support for the months of October, 1996 through May, 1997. Therefore, any income that Appellee received from the Stolle Corporation is immaterial to the child support issue.

## II.    THE AGREED ORDER

In the Marital Dissolution Agreement, Appellee undertook voluntary obligations relative to the post-secondary education of his daughters. This is not an obligation that can be imposed by law for "it is well settled that a parent has no legal duty to support a child who has attained majority." *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. App. 1990). Any obligation to support after a child has attained majority or has been otherwise emancipated is a voluntary contractual obligation beyond the legal duty of the parent. *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975).

This voluntary obligation assumed in the parties' Marital Dissolution Agreement dated February 12, 1994 became a problem, and the parties submitted to the court an Agreed Order of Modification in May of 1996. This modification required Appellant Caluger and the parties' daughters to submit documentation relative to college expenses. This agreed order was signed by Ms. Caluger and by her attorney when entered May 14, 1996. This agreed order was contractual in nature and does not merge into the final decree in the same manner as do

provisions governing child support for minor children. ***Blackburn v. Blackburn***, 526 S.W.2d 463, 465-66 (Tenn. 1975); ***Penland***, 521 S.W.2d at 224-25.

Appellants filed a petition to modify the agreed order of May 14, 1996 alleging that its documentation provisions were burdensome and unnecessary, as well as demeaning and invasive of the children's privacy. Appellants further filed a Rule 60.02 motion for the court to set aside the agreed order. The trial court found correctly that the agreed order was contractual in nature and valid and that the agreed order was effective as a contractual modification of the parties' prior agreement. As such the trial court held the agreed order was not void and denied Appellants' Rule 60.02 motion. We agree with the trial court action, both as to the petition to modify the agreed order and as to the Rule 60.02 motion.

In its findings of fact and conclusions of law, the trial court found that the agreed order's requirement that Appellants document the expenses in order to obtain reimbursement from the Father is not unreasonable. We agree. The court further held, in accordance with the testimony of both Ms. Caluger and the daughter Gericke, that Appellants have not complied with the agreed order for the fall semester of 1996 and the spring semester of 1997. After carefully examining the submissions of the parties and the evidence, much of which involved the credibility of Appellants, the trial court concluded that Appellants were entitled to a judgment for Gericke's college expenses in the amount of $597.70. The evidence does not preponderate against the findings of the trial judge, particularly on credibility issues where the trial judge is in the best position to make judgments. ***Tenn.-Tex Properties v. Brownell-Electro, Inc.***, 778 S.W.2d 423 (Tenn. 1989); ***Whitaker v. Whitaker***, 957 S.W.2d 834 (Tenn. App. 1997). We therefore uphold the trial court award of $597.70 to Appellants.

Appellants ask the court to resolve certain issues which might impact future dealings of the parties under the contract to pay for the children's college education. Appellants contend that Appellee did not adhere to the contract because he reimbursed the college as opposed to the daughter. Indeed, Appellee conceded that he sent all reimbursements to Gericke's college without regard to whether she had personally paid for the expenses. Appellants contend that

Appellee was in the wrong pointing to the following language of the Agreed Order:

> Reimbursement may be made to the institution so long as the child will attend such institution for the next semester/quarter, or to the child, if the child has provided [Appellee] with proof that she has already paid the institution for the semester/quarter previous and has completed the course of study at that institution.

It is significant that the Agreement uses the word "may." Our supreme court has compared the word "shall" to the word "may" stating that the latter "is permissive, and operates to confer a discretion." *Holdredge v. City of Cleveland*, 218 Tenn. 239, 402 S.W.2d 709, 713 (Tenn. 1966). We find that in light of this language, the Father had the right under the contract to reimburse the college and not the child so long as the child would be attending the institution for the next semester. If the child is in her last semester at a college such that Appellee's reimbursement can not be used by her as a credit against charges by that school in the future, then, upon presentation of proof that she has already paid the institution, Appellee should make a direct payment to the child.

III. ATTORNEYS FEES

The trial court awarded attorney fees for Jerry Sommerville in the amount of $1,500.00. It is clear that the trial court based its award of attorney fees on Appellants' failure to present documentation of Gericke's college expenses as required by the May, 1996 Agreed Order. This award represents a portion of the fee reflected in a post-trial attorney fee affidavit which Appellants had neither the opportunity to contest nor the opportunity to cross-examine. The award of attorney fees is not justified by the proof in the record. *Conners v. Conners*, 594 S.W.2d 672 (Tenn. 1980). The $1,500.00 attorneys fee awarded to Appellee is disallowed.

IV. RESTRAINING ORDER

The infinite patience and restraint of the learned trial judge in this case is certainly commendable. This father undertook a voluntary obligation to assist his daughters in post-secondary education. The attitude of the daughters, mirroring as it does, the attitude of their mother, is callous and unfortunate. Witness the testimony of Gericke:

<u>BY MS. DUNNING</u>:

Q. Did you or did you not tell me at your deposition that you had not applied for any more scholarships because you had been turned down twice in the past and you didn't want the rejection again. And I quote, "And besides, it would only give my dad an excuse to pay less if I got a scholarship"? Did you say that to me at your deposition?

A. I also seem to remember retracting it, saying, no, and then changing my statement.

Q. You retracted it?

A. I seem to remember changing my answer.

Q. But did you make the statement to me, that you didn't apply for scholarships because it would just give your dad an excuse to pay less?

A. I had said that statement. I believe that my father, through all of this we've gone through, is trying to avoid paying my student tuition --

The trial court *sua sponte* issued a restraining order restraining Appellant Caluger from interfering with the visitation privileges of the Father with the daughter Kara. At the time of this final order on September 3, 1997, Kara had attained her majority and being thus emancipated was not the subject of visitation rights. The restraining order will be dissolved.

V. CONCLUSION

1. Appellant Heidi Caluger is awarded judgment against Appellee for retroactive child support in the amount of $1,944.00.

2. The record indicates a previous judgment in favor of Jerry Sommerville against Heidi Caluger in the amount of $4,248.38 under date of March 8, 1996. The record further shows that partial payment on this indebtedness was made on June 16, 1997 with a balance due as of July 2, 1997, including post-judgment interest of $555.29. We agree therefore with the findings of fact of the trial court in this respect and the $555.29 judgment therefore will be offset against the $1,944.00 judgment for retroactive child support.

3. The award by the trial court of $597.70 in judgment to Appellants relative to college expenses for Gericke is affirmed.

4. The attorney fees of $1,500.00 awarded to Jerry Sommerville is disallowed.

5. The restraining order issued relative to visitation with Kara is dissolved.

Subject to the modifications heretofore set forth, the trial court judgment is affirmed and the case is remanded to the trial court for such further proceedings as may be necessary. In its discretion, the court taxes all costs of appeal against Appellants.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, PRESIDING JUDGE,M.S.


_____
WILLIAM C. KOCH, JR., JUDGE