# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

| | | |
|---|---|---|
| **CULTRA LANDSCAPING SUPPLY COMPANY,** | ) | Shelby County Circuit Court No. 28781 T.D. |
| Plaintiff/Appellant. | ) | |
| | ) | HON. ROBERT L. CHILDERS, JUDGE |
| VS. | ) | |
| **DIRECTOR OF HIGHWAYS DEPARTMENT OF TRANSPORTATION AND W. L. SHARPE CONTRACTING COMPANY, INC.** | ) | C. A. NO. 02A01-9512-CV-00275 |
| | ) | **AFFIRMED AND REMANDED** |
| Defendants, | ) | |
| AND | ) | OPINION FILED: |
| **CHARLES HILL, Individually and d/b/a C. H. HILL LANDSCAPE AND EXCAVATING**, | ) | |
| Defendant/Appellee. | ) | |

**FILED**

**December 5, 2001**

**Cecil Crowson, Jr.**
Appellate Court Clerk

**Andrew H. Owens**, LAW OFFICES OF DON OWENS, P.A., Memphis, Tennessee, for Plaintiff/Appellant.

**Jeffery D. Parrish**, BOROD & KRAMER, P.C., Memphis, Tennessee, for Defendant/Appellee Charles Hill.

_____

## MEMORANDUM OPINION[1]

_____

### FARMER, J.

This is an action by the appellant, Cultra Landscaping Supply Company (Cultra), seeking to recover the balance allegedly due on an open account. Cultra's complaint, as amended, was filed against the Director of Highways, Department of Transportation, W. L. Sharpe Contracting Company, Inc. (Sharpe) and Charles Hill, individually and d/b/a C. H. Hill Landscape and

---

[1]**Rule 10 (Court of Appeals).** **Memorandum Opinion**. -- (b) The Court, with concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

1

Excavating (Hill). For purposes of this appeal, however, the only other party before us is Hill, the appellee.[2] A bench trial resulted in a judgment for Hill. Cultra appeals on the sole basis that the evidence presented at trial preponderates against the trial court's findings. For reasons hereinafter stated, we affirm.

The following evidence was adduced at trial: In 1986, Sharpe was the general contractor on a road construction project for the State of Tennessee. Sharpe subcontracted with Hill to provide and install the sod required for the project. Hill, in turn, obtained Cultra to supply the sod. Cultra claims that it was never paid for the total amount of sod it delivered on the project.

Edwin Cultra testified that his "arrangement" with Hill was to simply supply the sod for the project. Cultra was not responsible for seeing that the sod lived or that it was properly installed. Mr. Cultra stated that Hill contacted him regarding the job and that "I agreed on the price of the sod per square yard to be delivered . . . ." He continued, "I sold [Hill] the sod by the square yard and gave [Hill] delivery tickets on each particular load, and that was signed by [Hill] people that we brought those loads to [the] project." He related that certain delivery tickets introduced into evidence represented "each and every delivery of sod made" on the project and that, based on those tickets, the balance due and owing from Hill is $18,250.77. He stated that the amount owed represented approximately 30 to 40 semi-trailer loads of sod. Mr. Cultra said that once delivered to the job site, Hill employees would unload the sod and a Cultra employee would return with a signed copy of a delivery ticket. Cultra made its last delivery of sod in August 1988, refusing to deliver anymore sod because of Hill's nonpayment.

Mr. Cultra testified that no one from Hill ever notified him that the sod delivered was

---

[2]The Director of Highways was named as a defendant pursuant to T.C.A. § 54-5-124 (civil actions against contractors by claimants). Cultra's complaint states that it "seeks no remedies" against Sharpe, but acts to put the latter "on notice" of said claim having been filed with the Department of Transportation. Prior to trial, a summary judgment was entered in favor of Sharpe. The order granting summary judgment provided that the State of Tennessee and the Department of Transportation were to retain certain funds to satisfy Cultra's claim in the event it proved meritorious at trial, in accordance with T.C.A. § 54-5-123. After trial, an agreed order was entered with this Court dismissing the Department of Transportation, Director of Highways as a party.

of inferior quality, improper quantity or that it had been rejected by Hill or the State, for whatever reason. He declared that usually the variance between the State's estimate and sod actually delivered is "real close . . . within 1 or 2 percent." Some of the "possible" reasons as to why the amount approved for payment by the State was substantially less than that actually delivered were if the sod died, had to be relaid, or if the State "missed some areas of measurements."

On cross-examination, Cultra was further questioned regarding whether the State ever informed him that some of the sod delivered was unacceptable, to which he replied, "I don't remember them telling me that at all." He continued, "[s]od is a perishable item, though. It can sit out there for four or five days, and it can become unacceptable." When asked, however, "[i]s it possible that the State of Tennessee said some of this sod was unacceptable because it was too thin?", Mr. Cultra responded, "[i]t's possible."

Allen Carey, a supervisor at Sharpe, testified that Sharpe "subcontract[ed] out . . . the sod and the seed and various roadway items." The parties engaged in the project were paid monthly by the State. Carey explained that once a month the State would send Sharpe an estimate of the work performed the preceding month along with a check. Sharpe, in turn, would send the estimates to the various subcontractors "with a check to cover payment for whatever that subcontractor had done during that monthly estimate." Carey stated that he contacted Cultra "in regard to making payments directly from the estimates as they came in from the State" and that Mr. Cultra "agreed to accept whatever amounts the State paid as full payment for the sod . . . ." Mr. Cultra denies ever communicating with Carey regarding his agreement with Hill as to how he would be paid. He testified, "[a]ny conversation that Mr. Carey and I have had wouldn't have been about [payment] terms, but would have been with regard to why I wasn't getting paid or where my money was or why hadn't Mr. Hill paid me for the sod that we had delivered."

Carey agreed that generally the State's estimate equals or closely approximates the actual work performed. He agreed that if, in fact, as much sod as Cultra contends was actually delivered, then there was a "large difference" in the State's estimate. The last payment Sharpe made for sod was on October 11, 1988. Each payment was by check issued jointly to Hill and Cultra.

3

Carey declared that Sharpe had paid Cultra all amounts that the State paid it for the sod delivered by Cultra to the project. Carey had no knowledge of any sod being delivered to the project that was improperly installed or perished.

Charles Hill testified that the "payment terms" under his agreement with Cultra was "[w]hatever the State's estimate was on the sod." Hill confirmed that he paid Cultra the entire amount that his business received from the State for the sod Cultra delivered. Hill stated that the sod used on the project was required to be a certain thickness and that some of the sod delivered by Cultra was deemed "unacceptable" after being measured for thickness and, therefore, not used by Hill on the project. He confirmed that it was necessary for him to change sod suppliers in order to complete the job. Hill agreed that Cultra delivered sod to the project until August 1988, but that its sod started being "turned down" in July. He estimated that approximately 15 to 20 loads of sod delivered by Cultra were determined unacceptable.

Hill also stated that certain tickets presented by Cultra employees upon delivery were signed by Hill employees even though those particular loads were later rejected. Two Hill employees, Craig Tate and Antonio Martin, confirmed that they had, on occasion, signed certain tickets for sod delivered that Cultra later removed.

We review this matter in accordance with Rule 13(d) T.R.A.P., which provides for a *de novo* review, accompanied by a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates otherwise. ***See, e.g., Tenn-Tex Properties v. Brownell-Electro, Inc.***, 778 S.W.2d 423, 425 (Tenn. 1989). In ruling from the bench, the trial court found that Mr. Cultra never denied informing Carey that he would accept as full payment whatever the State paid for the sod. While we do not find the evidence to support this particular finding, we, after a *de novo* review of the record, find a preponderance of the evidence to support the result reached by the trial court.

Cultra's argument that it was inadequately compensated appears based on its position that it never agreed to bear the risk of loss for sod delivered, but not properly maintained or installed

4

by Hill. Mr. Cultra testified as to "possible" reasons as to why the State's estimates for the sod would have been so at odds with that actually delivered; all involved inadequacies or mistakes on behalf of the State or Hill. We do not find the record, however, to establish that any of the sod was rejected for any reason other than inadequate measurement. Mr. Hill testified that the sod delivered by Cultra was rejected for being cut too thin and Mr. Cultra agreed that it was possible that some of the sod delivered was determined unacceptable because of improper thickness. We note also that various Hill employees testified that some tickets presented by Cultra employees upon delivery were signed by them even though the sod was ultimately rejected. This testimony is unrefuted. Thus, the proof establishes that although certain tickets indicate a delivery of sod to the project, that sod was later removed by Cultra as unacceptable and required no compensation.

Accordingly, we affirm the judgment of the trial court. Costs are assessed against Cultra Landscaping Supply Company, for which execution may issue if necessary.

_____
**FARMER, J.**


_____
**HIGHERS, J. (Concurs)**


_____
**LILLARD, J. (Concurs)**

5