Harry ZAHARIAS and wife, Judy
Zaharias, Plaintiffs/Appellees,

v.

Angelo VASSIS and wife, Saundra Vas-
sis, and United National Insurance
Company, Defendants/Appellants.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Dec. 8, 1989.

Application for Permission to Appeal
Denied by Supreme Court
March 26, 1990.

Lawrence E. Levine and Richard D. Moore, Levine, Mattson, Orr & Young, Nashville, for defendants-appellants.

Donald G. Dickerson and David Day, Dickerson & Day, Cookeville, for plaintiffs-appellees.

NEARN, Special Judge, Retired.

This suit was brought to determine the liability of the insurance company to the mortgagee named in the policy. The Chancellor found in favor of the mortgagee and the insurer has appealed.

Plaintiff, Harry Zaharias, owned a restaurant in Jamestown, Tennessee, of late, known as Angelo's Pizza and Steak House. Zaharias hired his fellow countryman from Greece, the defendant Angelo Vassis, to work in the restaurant. Vassis managed the restaurant and later came to own a half-interest in the restaurant business with Zaharias. Later on, Vassis desired to acquire Zaharias' interest in the restaurant business as well as the building and land owned by Zaharias where the business was located. The parties reached a "lock, stock and barrel" agreement for $190,000, that is, Zaharias agreed to sell his interest in the restaurant business and to sell the real estate upon which the business operated for said sum. There was no breakdown of the separate value of the things sold.

The parties agreed that Vassis would borrow $100,000 from The American Bank and Trust Company of Cookeville, Tennessee and that Zaharias would sign the note with the bank as an accommodation maker to assist Vassis in the acquisition of those funds. Additionally, Zaharias agreed to carry a $90,000 second mortgage (behind the bank's first mortgage) to secure the payment of the balance owed. The first mortgage or trust deed conveyed the real property as security and the second mortgage or trust deed conveyed the same real property as security as well as the building contents. Under the terms of both trust deeds, it was the duty of Vassis to keep the secured property insured. Vassis contacted the insurance agent who had been carrying the coverage and advised, in somewhat broken English, that he was the owner of the business, land, building and all and that he wanted "full coverage insurance" and "to bring the first mortgage and for American Bank & Trust in Cookeville, and second mortgage on Mr. Zaharias." The record reveals that there was no specific statement to the agent that the personal property was secured by the Trust Deed or that in addition to describing the personal property in the Trust Deed, Zaharias had also filed a financing statement under the UCC securing the personal property. The policy was issued insuring from loss by fire and other perils, the building in the amount of $148,500 and contents in the amount of $100,000, with Vassis as the named insured and showing the bank as first "mortgagee" and Zaharias as second "mortgagee". The binder which was issued indicated the status of the parties by means of a "block" where the party having a security interest could be designated as "mortgagee" or "loss payee". The block designating "mortgagee" was checked.

The property burned. The insurer has paid its liability under the policy for loss to the real property but has refused to pay to Zaharias for the loss of the personal property. The insurer has refused to pay on the grounds that it is not obligated to pay under the policy because Zaharias was designated as a "mortgagee" in the policy and not a "loss payee". The policy contains a "Mortgage Clause" which provides that it "Applies only to building items and is effective only when policy is made payable to a named mortgagee or trustee." Under the terms of the policy, "building items" includes the building and certain permanently affixed items such as heating and air-conditioning units. The clause appears to be a standard one and provides among other things that the policy "shall not be

invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings."

After the fire, Zaharias foreclosed on his second mortgage (the first having been satisfied by insurance, but only a portion of the second having been so satisfied). The foreclosure by Zaharias included the foreclosure of the personal property and Zaharias was the highest and best bidder for the remains of both. The bill of sale covering the remnants of the fixtures included "all of Angelo Vassis and Saundra Vassis' interests in the fixtures and equipment."

As we read plaintiff's complaint, recovery is based upon any one or combination of three theories. The first is that as a listed mortgagee, under the terms of the policy, he is entitled to recover. The second is that as purchaser of the damaged contents at the foreclosure sale he became the owner or assignee of the claim for insurance proceeds for the damaged contents and that "based on the Security Agreement, Bill of Sale, and Tennessee Uniform Commercial Code, Harry Zaharias maintains he has the legal right as assignee, purchaser and successor in interest to Angelo and Saundra Vassis' ownership of the damaged contents to pursue the claim under the insurance policy." Thirdly, plaintiff claims an interest in the policy proceeds available to cover damage to the contents on general equitable principles and as a third party beneficiary of the insurance contract.

The defendant insurer denied that Zaharias was entitled to any payment for content loss under the insurance contract and denied that Mr. and Mrs. Vassis were entitled to receive any proceeds for damage to the contents of the property. Further, that Zaharias could not be the owner or assignee of any claim against the policy as it specifically provided that "assignment of this policy shall not be valid except with the written consent of this company."

The Chancellor concluded as follows:

1. Harry Zaharias had a legal and equitable mortgage or lien on all of the contents of Angelo's Pizza & Steak House at the time of the fire.

2. Harry Zaharias was a third party beneficiary of the insurance policy and had a lien on the insurance proceeds from the collateral.

3. The insurance company's defenses under the terms of the mortgage clause and non-assignment clause do not apply in this case, particularly given the equitable principles which the Court is required to apply.

We concur in the Chancellor's conclusion that Zaharias had a legal and equitable mortgage or lien on the building contents at the time of the fire. However such conclusion is certainly not determinative of the case. The question to be determined is whether that interest of Zaharias is protected by the policy. We do not concur in the Chancellor's conclusion that Zaharias is a third party beneficiary of the insurance policy.

There is no doubt from this record that as a matter of fact, both Vassis and Zaharias intended that the interest of Zaharias in both the real and personal property be protected under the insurance policy. However, it is as equally free from doubt that their mutual intent was never communicated to the insurer. The insurer was told only that Zaharias occupied the status of mortgagee, with no mention of the fact that Zaharias held an interest in the personal property. While it must be conceded that personal property may be the subject of a mortgage, the proof in the record is that in the insurance industry the term "mortgagee" applies only to real property and the term "loss payee" is used in regard to another who has an interest in personal property. We understand the law of this state to be that it is necessary, in order to be considered a third party beneficiary, for the party seeking such status to show that he was contemplated as such by the contracting parties. *Wilson Estate v. Arlington Auto Sales*, 743 S.W.2d 923 (Tenn.App.1987). There is no doubt as to the intent and meaning of the parties to the

Zaharias–Vassis contract, but that is not the contract with which we are presently concerned. We are concerned with the insurance contract made between Vassis and the insurer. We concede that it was in the mind of Vassis that Zaharias was to be a beneficiary of the Vassis-insurer contract as to personalty, but such intent on the part of Vassis was not communicated to the other contracting party, the insurance company. Since there was no mutual intent that Zaharias was to be a third party beneficiary of the policy as to the personal property, he cannot be considered as such.

Counsel for the insurer states in his brief that "The mortgagee's interest under the insurance policy is unambiguously defined as follows: 'MORTGAGE CLAUSE (Not applicable in Minnesota): (Applies only to building items and is effective only when policy is made payable to a named mortgagee or trustee)'". We do not perceive that such verbiage defines ambiguously or unambiguously a mortgagee's interest under the policy. It first states that the mortgage clause itself applies only to loss pertaining to the building and then merely makes provisions for that interest under certain circumstances but certainly does not define the interest of the mortgagee or the term "mortgagee". In fact, the clause expressly refuses to define the interest of the mortgagee; because it provides that the company will pay to the mortgagee "as interest may appear." The full clause is as follows:

**7. MORTGAGE CLAUSE (Not applicable in Minnesota):** (Applies only to building items and is effective only when policy is made payable to a named mortgagee or trustee.)

Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand pay the same.

Provided, also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium of such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) of any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage

and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

The policy simply has no clause applicable to a mortgage or lien interest in personal property as would affect this case. Next, the insurer insists that since the policy prohibits assignment without permission, plaintiff may not recover as assignee. We concur that the policy prohibits as assignment of the policy without company permission. However, in spite of the arguments of counsel we are unable to find any policy assignment involved in this case. There is a vast difference between the assignment of a policy and the assignment of policy proceeds after loss. See 16 Couch on Insurance 2d (Rev.Ed.) *Assignment and Transfer of Policy*, § 63.40 (1983). The defendant insurer's liability as to amount was fixed at the time of the loss. The entitlement to the proceeds arising from that loss is what this dispute is about. Additionally, the record shows that the policy was cancelled after the fire loss and no one disputes the propriety of that action. The foreclosure sale was held after the policy was cancelled and any rights that plaintiff has were acquired by the purchase of the rights of Vassis in the proceeds of the policy either by purchase at the foreclosure or on equitable principles.

Therefore, we hold the interest of Zaharias in the proceeds due under the policy is not acquired under the terms of the policy, but is the right of Vassis to those proceeds acquired by separate contract or equity.

Accordingly, we must consider this matter of personal property insurance proceeds as if it involved an insurance policy on personal property with no mention whatsoever of a lien holder or mortgagee of personalty. The question then arises as whether, after loss, one claiming an interest in the proceeds, either on contract principles (that is, a contract between the claimant and the insured) or on equitable principles, may bring suit to recover the insured's interest in the proceeds before it is paid to the insured. We know of no law that would prevent such a claim. However, in such case, the claimant's right to recover is based upon the insured's right and can rise no higher. See 6A C.J.S. *Assignments* § 88 (1975).

During the course of the proceedings below, counsel for the insurer sought to cross-examine Vassis on his part in the fire. Counsel for the insurer asked Vassis if he was indicted for arson. He answered "Yes." Objection as to relevancy was made. Counsel for the insurer insisted that any involvement of Vassis in arson was relevant. Then, and only on the basis of credibility, the Court allowed defense counsel to ask Vassis whether he was indicted and convicted of arson. The witness answered that he was indicted but not convicted. He was then asked if the jury did not "hang up" in the arson case. He answered "yes". He was then asked if, after the hung jury, did he plead to a pre-trial diversion in lieu of being tried on arson. Objection was made and the court would not permit the question on the grounds "That it is not a conviction. It doesn't go to the credibility." We hold that it was error for the Chancellor to limit the questioning on the possible involvement of Vassis in the fire and to refuse to consider any such evidence except on the basis of credibility. We so hold because it is our opinion that Zaharias cannot claim a right to the proceeds of the fire under any mortgage clause in the policy, but can recover only based upon a right that Vassis may have in the proceeds due as a result of the fire. Were the Chancellor correct in his conclusion that Zaharias was a third party beneficiary of the contract, then his evidentiary ruling would also be correct because as a third party of the policy Zaharias would be entitled to contract rights independent of those of Vassis, which rights would include insulation from the wrongful acts of the insured under the policy. However, as we

have noted, the right of Zaharias to the insurance proceeds does not arise as the result of being a party to the insurance contract, for he is not, but flows from and is dependant upon the rights of Vassis. Equity requires that the insured deal with the insurer in good faith. We do not consider "torching" the insured property to be an act of good faith on the part of the insured. Whether or not Vassis had a hand in the fire is directly related to his right to recover under the policy. The right of Zaharias to recover is directly dependent on the right of Vassis to recover. Arson is not only a crime under a criminal code but is also a fraud upon the insurance company. Whether or not fraud exists ought to be first determined by the trier of fact, *Long v. State Farm Fire & Casualty Co.*, 510 S.W.2d 517 (Tenn.App.1974), and not at the appellate level.

Therefore, we are of the opinion that justice requires this case to be remanded to the Chancellor for the presentation of proof excluded by the Chancellor and the consideration by him of such proof to determine the derivative rights of the plaintiff, if any, and any other proof or proceedings that may be required and enter such decree as justice requires. See T.C.A. § 27–3–128.

The result is that the judgment below is reversed and the cause is remanded for such other and further proceedings not inconsistent with this opinion.

Costs of appeal are adjudged against appellee and the costs below will await the further decision of the Chancellor.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.