70 F.3d 1271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dallas Ray BALLARD; and wife Betty E. Ballard, individually
and d/b/a Homeowner's Warehouse; First Bank of
Rhea County, Plaintiffs-Appellees,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellant.
 No. 94-5851.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1995.
 
 Before: KENNEDY and MOORE, Circuit Judges, and POTTER, District Judge.*
 MOORE, Circuit Judge.
 
 
 1
 This is an appeal from the district court's order granting partial summary judgment to appellee First Bank of Rhea County ("First Bank"). Appellant St. Paul Fire and Marine Insurance Company ("St. Paul") argues that the district court misinterpreted the term "covered property" in the insurance policy at issue, and thus should not have granted partial summary judgment to First Bank. For the reasons that follow, we affirm.
 
 
 2
 Plaintiffs Dallas and Betty Ballard (the "Ballards"), who are not parties to this appeal, owned a hardware store in Dayton, Tennessee. First Bank held a mortgage on both the hardware store building and the business contents of the building.[1] The "business contents" included furniture, equipment, and inventory of the Ballards' store, and are classified as personal property. The Ballards purchased a fire insurance policy on the building and its business contents from St. Paul.
 
 
 3
 On May 6, 1992, the Ballards' hardware store burned and was partially destroyed. St. Paul refused to pay the Ballards for any of their losses, asserting that the fire was intentionally set by or on behalf of the Ballards. First Bank filed a proof of loss on the claim as a mortgage holder, and St. Paul paid First Bank $124,457.35 for the amount of damage to the hardware store building. First Bank also claimed a loss as mortgage holder on the business contents of the building. Asserting that the mortgage clause of the policy applied to protect only First Bank's interest in the Ballards' building, St. Paul refused to pay First Bank for the loss of any of the business contents.
 
 
 4
 The Ballards brought an action in Tennessee state court against St. Paul and First Bank for breach of contract for failure to pay insurance proceeds. First Bank filed a cross-claim against St. Paul asserting that First Bank was entitled to be paid for the loss of the business contents of the building. St. Paul removed the action to the United States District Court for the Eastern District of Tennessee and moved to realign First Bank as a party plaintiff in the action, which motion the district court granted.
 
 
 5
 First Bank then moved for partial summary judgment on its claim against St. Paul. The district court granted summary judgment to First Bank on the issue of St. Paul's liability to First Bank. The district court held that the language "covered property" in the portion of the policy describing the rights of mortgage holders included both the real property and the personal property in which First Bank held a mortgage interest, and that St. Paul was required to pay First Bank for the loss of the business contents. The district court reserved for trial the issue of First Bank's damages, certified the issue for interlocutory appeal, and stayed proceedings in the district court pending appeal. We permitted an appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 
 6
 This court reviews the district court's grant of summary judgment de novo, and applies the same test as used by the district court. Garden City Osteopathic Hospital v. HBE Corporation, 55 F.3d 1126, 1130 (6th Cir.1995). "Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if all the evidence before the district court 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Id. (quoting Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988))
 
 
 7
 The provisions of the insurance contract at issue read as follows:
 
 
 8
 ... A loss may be covered under more than one part of this agreement. If it is, we won't pay more than your actual loss less the deductible....
 
 
 9
 Who We'll Pay For Loss To Business Contents
 
 
 10
 If the Coverage Summary identifies a person or organization to receive payments for loss to business contents, we'll adjust the loss with you.
 
 
 11
 However, payment will be made to you and the person or organization named, based on the financial interest each has in the covered property.
 
 If Your Building Is Mortgaged
 
 12
 If the Coverage Summary identifies a mortgage holder, this section applies. We'll consider trustees to have the same rights and duties as mortgage holders.
 
 
 13
 Rights and duties of mortgage holders. We'll make payments for losses to you and any mortgage holder based on the interest each has in the covered property....
 
 
 14
 (emphasis added). In the Coverage Summary of the insurance policy, both "Building" and "Business Contents" are listed under "Property Protection." First Bank is listed as the "Mortgage Holder" in the Coverage Summary.
 
 
 15
 The dispute in this case centers around the meaning of the term "covered property" as it is used in the paragraph that begins "Rights and duties of mortgage holders." St. Paul argues that First Bank's interest as a mortgage holder only applied to its interest in the building and not to its interest in the business contents because the term "covered property" includes only the real property insured under the policy. St. Paul argues that the heading on the mortgage holders' rights provision, which says "If Your Building Is Mortgaged," limits the term "covered property" as used in that provision to the building.
 
 
 16
 First Bank argues that "covered property" includes both the building and the business contents of the building. First Bank bases its argument on the fact that St. Paul used the term "covered property" to refer to both real property and business contents in other parts of the insurance policy. First Bank also argues that St. Paul easily could have stated that "covered property" included only the building if that was how St. Paul intended the mortgage holder provision to be interpreted. Finally, First Bank argues that any ambiguity in the language should be construed against its drafter, St. Paul, and in favor of coverage.
 
 
 17
 Both parties have assumed that Tennessee law applies. The insurance contract appears to have been executed and performed in Tennessee, indicating that Tennessee law should apply. In Tennessee, the ordinary rules of contract construction apply in interpreting insurance contracts. Demontbreun v. CNA Insurance Cos., 822 S.W.2d 619, 621 (Tenn.App.1991). The language of an insurance policy should be construed "in the light of reason" and given its plain, ordinary meaning. Id. at 621. "... [T]he paramount rule of construction in insurance law is to ascertain the intent of the parties." Blue Diamond Coal Co. v. Holland-America Insurance Co., 671 S.W.2d 829, 833 (Tenn.1984). The parties' intent is to be derived from the four corners of the policy, giving effect to all parts of the policy. However, if the policy is ambiguous, extrinsic evidence may be considered to ascertain the intent of the parties. Id.
 
 
 18
 An insurance policy is ambiguous if it is capable of more than one reasonable construction. See Harkavy v. Phoenix Insurance Co., 417 S.W.2d 542, 546 (Tenn.1967). Where policy language is ambiguous, Tennessee law requires that the language be construed in favor of the insured. Id. at 546; Spears v. Commercial Insurance Co. of Newark, New Jersey, 866 S.W.2d 544, 550 (Tenn.App.1993). A provision in a policy limiting or reducing coverage is to be construed strongly against the insurance company. Sturgill v. Life Insurance Co. of Georgia, 465 S.W.2d 742, 745 (Tenn.App.1970).
 
 
 19
 The district court held that "covered property" clearly and unambiguously includes both the Ballards' building and its business contents. While the district court's ruling certainly is supportable, "covered property" is not explicitly defined in the insurance policy. The language "covered property" appears to be susceptible to two different reasonable interpretations--the ones urged by the parties in this case. St. Paul's interpretation that "covered property" includes only the building is not completely unreasonable, since "covered property" appears in a section of the policy where the heading reads "If Your Building Is Mortgaged." However, First Bank's interpretation is the more reasonable interpretation, because nothing in the heading or contents of the provision entitled "If Your Building Is Mortgaged" explicitly limits coverage to the building alone; the provision instead contains the broader language "covered property."
 
 
 20
 There are additional reasons favoring First Bank's interpretation. The Coverage Summary lists the property insured by the policy as the building and its business contents. St. Paul used the term "building" in other parts of the insurance policy when it intended to refer only to the building, and used the term "covered property" when referring to all property insured under the policy. First Bank reasonably interpreted "covered property" in the mortgage holder provision consistently with its use in the rest of the insurance contract.
 
 
 21
 St. Paul relies on Zaharias v. Vassis, 789 S.W.2d 906 (Tenn.App.1989), in which the court held that a mortgagee was not entitled to recover fire insurance proceeds for a loss of personal property. However, the mortgage clause in Zaharias was explicitly limited to "building items," which that policy defined as the building and permanent fixtures such as heating and air-conditioning units. Zaharias, 789 S.W.2d at 907. Unlike Zaharias, in this case the mortgage clause itself arguably covers the disputed personal property.
 
 
 22
 Because the "covered property" language is at least ambiguous, it must be construed against the insurer, St. Paul. Therefore, the policy should be construed to cover both the building and its business contents, requiring St. Paul to pay First Bank for the loss of the business contents. The district court's order granting partial summary judgment to First Bank is AFFIRMED.
 
 
 
 *
 Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 First Bank's interest in the business contents of the building was a security interest granted in a deed of trust. First Bank's security interest likely is governed by Article 9 of the Uniform Commercial Code. However, because the parties declined to address this distinction, and because trustees have the same rights as mortgage holders under the terms of the insurance policy, we will refer to both interests as "mortgage interests."