IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2001 Session

# ROY MICHAEL MALONE, SR. v. HARLEYSVILLE MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Hamilton County**
**No. 98-1273     Howell N. Peoples, Chancellor**

## FILED MARCH 13, 2001

### No. E2000-01308-COA-R3-CV

This matter involves a dispute concerning a fire and casualty insurance policy ("Policy") which covered an apartment complex, Star Chase Apartments. Harleysville Mutual Insurance Company ("Defendant") was the insurance carrier, and the named insured was John L. Oliver, LLC ("Oliver"). A fire in one of the apartment buildings caused substantial damage. Approximately six months later, Oliver sold Star Chase to Roy M. Malone, Sr. ("Plaintiff"), prior to starting any repairs to the burned building. Oliver also assigned to Plaintiff his right to the proceeds under the Policy, and Defendant acknowledged this assignment. The Trial Court found that Plaintiff, as Oliver's assignee, was entitled to recover the replacement cost of the burned building, plus prejudgment interest. The Trial Court denied Plaintiff recovery for business loss. Plaintiff appeals the amount awarded to him as the replacement cost and the Trial Court's denial of any additional recovery for business loss. Defendant argues that the assignment of the "proceeds" to Plaintiff did not entitle Plaintiff to recover any amount as replacement cost for repairs done after the assignment. Defendant also objects to the amount of the replacement cost found by the Trial Court and to the awarding of prejudgment interest. We reverse the Trial Court's award of prejudgment interest and affirm all other aspects of the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part
and Reversed in Part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the Appellant, Roy Michael Malone, Sr.

Jeffrey L. Cleary and Michael A. Kent, Chattanooga, Tennessee, for the Appellee, Harleysville Mutual Insurance Company.

## OPINION

## Background

Harleysville Mutual Insurance Company ("Defendant") provided fire insurance coverage with policy limits of $750,000 for an apartment complex, Star Chase Apartments ("Star Chase") located in Red Bank, Tennessee. A portion of one of Star Chase's buildings, Building "A," burned in August 1998. The named insured was John L. Oliver, LLC ("Oliver"), the owner of Star Chase at the time of the loss. The fire destroyed a portion of the roof and caused severe damage to approximately one-half of the twenty units of Building "A."

The fire insurance policy at issue ("the Policy") provided that Oliver, as the named insured, could not transfer his "rights and duties under [the Policy] . . . without [Defendant's] written consent except in the case of death of an individual named insured." With respect to the recovery allowed by the Policy, the Policy provided as follows:

### E.  LOSS CONDITIONS

* * * * * *

**7.  Valuation**

> We will determine the value of Covered Property in the event of loss or damage as follows:

**a.**  At actual cash value as of the time of loss or damage. . . .

* * * * * *

### G.  OPTIONAL COVERAGES[1]

**3.  Replacement Cost**

**a.**  Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

* * * * * *

---

[1] The Policy's Declarations showed that Oliver had Replacement Cost coverage.

**c.**     You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.**     We will not pay on a replacement cost basis for any loss or damage:

**(1)**     Until the lost or damaged property is actually repaired or replaced; and

**(2)**     Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(e)**     We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2) or (3)** . . . :

**(1)**     The Limit of Insurance applicable to the lost or damaged property;

**(2)**     The cost to replace, on the same premises, the lost or damaged property with other property:

    **(a)**     Of comparable material and quality; and
    **(b)**     Used for the same purpose; or

**(3)**     The amount you actually spend that is necessary to repair or replace the lost or damaged property.

The Policy also provided coverage for loss of business income. The Policy provided that Defendant "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

In October 1998, Oliver's mortgagee, AmSouth Bank, submitted a proof of loss to Defendant for $750,000, or the Policy's limits. Shortly thereafter, Oliver submitted a proof of loss for approximately $778,200. These amounts were disputed by Defendant. The parties stipulated that Defendant made two advance payments, totaling $262,915 and characterized by Defendant as

estimated "actual cash value." Defendant also made one advance payment for loss of business income in the amount of $10,000.

In February 1999, Oliver sold Star Chase to Roy M. Malone, Sr. ("Plaintiff"). As part of the transaction, Oliver assigned to Plaintiff his right to proceeds from the Policy and any claims arising out of the fire loss. Defendant reviewed Oliver's and Plaintiff's assignment agreement and responded to Oliver via written correspondence on February 16, 1999, as follows:

> We have received and reviewed the Collateral Assignment Agreement between you and [Plaintiff] for our signature. We will acknowledge your assignment of the claim proceeds upon receipt of the fully executed document by including the assignee's name on all future loss payments. However, the claim proceeds assignment is between you and the assignee and does not need a signature from a representative of [Defendant]. The assignment agreement between you and the assignee should include a power of attorney so that the assignee can sign and negotiated checks issued to the named insured and the assignee.
>
> Again, we will honor your assignment of the claim proceeds upon receipt of the fully executed documents by including the assignee's name on all future loss payments. . . .

Suit was brought initially by AmSouth Bank, and Oliver later intervened as plaintiff. After purchasing Star Chase, Plaintiff intervened in the lawsuit and filed an Amended Complaint which alleged breach of contract and statutory bad faith. Plaintiff sought recovery for damages to Star Chase and loss of business income related to the fire. The Trial Court dismissed Plaintiff's bad faith claim, and that decision has not been appealed.

During the six-months between the fire and the time of the sale, Oliver neither started any demolition or repairs of the burned building nor undertook any measures to protect it from further damage. Testimony at trial was disputed as to whether protective measures such as a tarp would have made a difference. Plaintiff began demolition soon after he purchased Star Chase in February 1999, and claimed that he had completed the repairs by the time of trial in March 2000. The building inspector for the City of Red Bank, however, disagreed to some extent and testified that Building "A" was not completely repaired as of the day before trial.

Several witnesses testified regarding the replacement cost of Star Chase. Plaintiff, formerly a general contractor, testified that he spent $795,000 on repairs which took over a year for

completion.[2]  In addition, Plaintiff testified that the replacement cost was between $800,000 and $850,000.  Plaintiff failed to submit any documentation at trial supporting this testimony.

Another witness for Plaintiff was Douglas Norman, a construction estimator and consultant for Maryland-based Rolyn Companies.  Norman's final estimate for replacement cost was $750,936.  In arriving at his opinion, Norman used a computer program which did not provide Chattanooga-area values for construction services and supplies.  Norman also testified that Rolyn's fee is a percentage of its client's settlement or recovery.  Phillip Davidson, a public insurance adjustor, also testified on behalf of Plaintiff.  Davidson prepared Oliver's proof of loss, and like Rolyn Companies, was to be compensated on a contingency basis.

Defendant presented Kenneth Gilreath, an insurance adjustor, who testified that he estimated the replacement cost to be approximately $352,000.  Gilreath was retained by Defendant to prepare this estimate.

Defendant also submitted the testimony of Timothy Lind, an estimator and president of a Chattanooga construction company.  Lind testified that he had been interested in purchasing Star Chase from Oliver and that he had secured a purchase contract with Oliver, second in line behind Plaintiff.  Lind first inspected the damage approximately 1.5 months after the fire and frequently returned to the site.  Lind intended to rebuild 12 of the 20 units of Building "A."  Lind testified that Building "A" deteriorated further after the fire since it was left exposed to the elements.  Lind's first estimate in November 1998, totaled approximately $400,000, which he later revised in January 1999 to total nearly $520,894.  Lind attributed this increase to Oliver's failure to protect the burned structure from further damage.  Both estimates were prepared when Lind hoped to purchase Star Chase from Oliver.

As to the proof regarding Plaintiff's claim for loss of business income, Plaintiff testified that he sustained $119,100 in lost rents between the time of the fire in August 1998, and March 2000, the date of completion of repairs.  Plaintiff testified that due to the demolition and construction of Building "A," Star Chase sustained a drop in occupancy in the remaining buildings.  In support of his testimony, Plaintiff submitted only Star Chase's rent rolls.  Lind, on the other hand, testified that he reviewed the rent rolls when he was a potential purchaser and found discrepancies in the rent rolls' information regarding vacancy and occupancy.  Moreover, Lind determined upon his inspection of Star Chase that not all of the units in Star Chase's other buildings were habitable.

The Trial Court awarded replacement cost to Plaintiff in the net amount of $256,979, plus prejudgment interest commencing on the date that Oliver filed his Motion to Intervene.  The Trial Court explained in its Memorandum Opinion that it arrived at this figure by using the opinion of Timothy Lind that the replacement cost totaled $520,894 and then subtracting the deductible and the advances made by Defendant to Oliver.  In its Memorandum Opinion, the Trial Court found that

---

[2] Plaintiff testified that the repairs to Building "A" were nearly complete in February, 1999, when a second fire occurred.

Oliver assigned his right to the insurance claim proceeds to Plaintiff and that Defendant acknowledged this assignment in its February 16, 1999, correspondence when it recognized Plaintiff as the loss payee. With respect to Plaintiff's claim for loss of business income, the Trial Court held in its Memorandum Opinion that Plaintiff failed to provide sufficient proof at trial to support this claim. Both parties take issue with the final judgment.

**<u>Discussion</u>**

Plaintiff raises the following issues on appeal: 1) whether the Trial Court erred in holding that Plaintiff's recovery for replacement cost for Building "A" was $520,894, instead of the substantially higher amount Plaintiff expended in repairs to Building "A"; and 2) whether the Trial Court's denial of Plaintiff's claim for loss of business income was in error.

Defendant does not dispute the Trial Court's denial of Plaintiff's claim for loss of business income. Defendant does, however, raise the following issues on appeal: 1) whether the Trial Court erred in awarding Plaintiff recovery for replacement cost since, Defendant argues, Plaintiff, as assignee only of the Policy proceeds, could not exercise the contract rights of the named insured, Oliver; 2) if Plaintiff was entitled to recovery for replacement cost, whether the Trial Court erred in finding the replacement cost to be $520,844 rather than the lower amount presented by Defendant; and 3) whether the Trial Court erred in awarding prejudgment interest to Plaintiff, and if an award of prejudgment interest was appropriate, whether the Trial Court used the wrong commencement date.

We first address whether Plaintiff, as an assignee of the Policy proceeds, was entitled to any recovery for replacement cost. As this issue involves the Trial Court's conclusions of law, our review of this matter is *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

The record shows that Defendant does not dispute that Plaintiff received an assignment of the claim proceeds from Oliver. Defendant, however, contends that at the time of the assignment, no further proceeds were due under the Policy. While not stated exactly in these words, Defendant then maintains that Plaintiff's right to any of the proceeds under the policy was fixed at the time of the assignment and sale. Therefore, since no future proceeds could become due, the assignment of the future proceeds to Plaintiff was an assignment of nothing according to Defendant.

The Policy states that Defendant will not pay replacement cost until the property is repaired or replaced. Defendant apparently argues that because Oliver failed to complete or even begin any repairs to Building "A" prior to the assignment of proceeds and sale of Star Chase, Oliver could not have recovered replacement cost. Since the rights of Plaintiff, as assignee of the proceeds, could rise no higher than those of Oliver, Defendant argues that Plaintiff is barred from recovery of replacement cost. Defendant asserts that Plaintiff's claim for replacement cost is an exercise of a right under the Policy in contrast to a right to claim proceeds.

We agree with Defendant that Plaintiff, as an assignee of the claim proceeds, has no right to recover proceeds beyond what right Oliver had as the named insured. *See Zaharias v. Vassis*, 789 S.W.2d 906, 910 (Tenn. Ct. App. 1989) (citing 6A C.J.S. *Assignments* § 88 (1975)). The record on appeal establishes that Plaintiff received a valid assignment of the Policy proceeds, not the Policy itself. *See Metropolitan Life Ins. Co. v. Brown ex rel. Fleming*, 160 S.W. 2d 434, 437-38 (Tenn. Ct. App. 1941) (holding that an assignment of proceeds made after a loss, as distinguished from an assignment made prior to the loss date, was valid despite the lack of consent by the insurer since the liability of the insurer was fixed at the time of the loss); *see also Zaharias*, 789 S.W. 2d at 910 (recognizing the difference between an assignment of a policy and an assignment solely of the proceeds).

We reject, however, Defendant's argument that Plaintiff is not entitled to recover replacement cost. The proof establishes Defendant's February 16, 1999, correspondence specifically recognized the assignment of future claim proceeds to Plaintiff. The record on appeal shows that Defendant, in its February 16, 1999, written correspondence, stated that it "will honor [Oliver's] assignment of the claim proceeds upon receipt of the fully executed document by including the assignee's name on all future loss payments." This correspondence presupposes that future loss payments would be made to Plaintiff. Moreover, if Oliver had been the one who repaired Building "A," Oliver, as the named insured, would have been entitled to replacement cost under the Policy. Accordingly, as Oliver's assignee of claim proceeds, Plaintiff is entitled to replacement cost since he undertook the task of repairing Building "A." Plaintiff's claim to recover replacement cost proceeds is appropriate as such a right was held by Oliver prior to the assignment. The liability of Defendant was fixed at the time of the loss with that liability being the value of the replacement cost as defined in the policy. We note that the Trial Court's holding on this issue requires Defendant to pay nothing more than what it contracted to pay when it accepted premiums on the Policy. We find no error in the Trial Court's decision to award Plaintiff the proceeds equal to the replacement cost.

We next review the amount of the Trial Court's award for replacement cost. Since this issue involves a finding of fact by the Trial Court, our review is *de novo* upon the record, accompanied by a presumption of the correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). Both parties argue that the amount of the award for replacement cost was erroneous. Plaintiff, of course, contends that he should have been awarded more, while Defendant declares that Plaintiff was awarded too much despite the Trial Court's heavy reliance upon the opinion testimony of Defendant's witness, Timothy Lind. It is apparent from the Trial Court's Memorandum Opinion that it duplicated the amount testified to by Lind as its award for replacement cost.

With respect to other testimony, the Trial Court, in its Memorandum Opinion, discounted Plaintiff's testimony regarding repair costs and replacement cost since Plaintiff testified to a "blanket figure" and failed to submit any documentation in support of his testimony. Plaintiff's remaining two witnesses, Phillip Davidson and Douglas Norman, were similarly rejected by the Trial Court since they were not familiar with the local cost of materials and labor and were to be compensated based upon a percentage of Plaintiff's recovery. Moreover, the Trial Court recognized

in its Memorandum Opinion that Kenneth Gilreath, although not an employee of Defendant, owed a duty of loyalty to Defendant as its retained witness.

In discussing this issue, our Supreme Court has held that:

Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses.

*Tenn-Tex Prop. v. Brownell-Electro*, 778 S.W.2d 423, 426 (Tenn. 1989). Here, the Trial Court found that Timothy Lind was the most credible witness.

In further support of his argument, Plaintiff contends that the "best evidence" of replacement cost was the actual repair costs established through Plaintiff's trial testimony. We reject this argument as well because, as discussed, the Trial Court specifically found Timothy Lind to be the most credible of all the witnesses who provided testimony regarding replacement cost. *See Tenn-Tex Prop.,* 778 S.W.2d at 426. Moreover, the Policy specifically provides that Defendant will pay the least amount of the following for replacement cost: the Policy limit of $750,000; the cost to replace with comparable material and quality; or the amount that the insured actually spends that is necessary to repair or replace the damaged property. *See E. K. Hardison Seed Co. v. Continental Cas. Co.,* 410 S.W.2d 729, 735 (Tenn. Ct. App. 1966) (holding that where an insurance policy provision is "plain and unambiguous, it must be applied as it reads").

We hold that the preponderance of the evidence does not weigh against the Trial Court's finding as to the replacement cost awarded. Therefore, we affirm the Trial Court on this issue.

Plaintiff also contends that the Trial Court should have awarded him recovery for loss of business income. The record on appeal shows that in support of his testimony, Plaintiff submitted only rent rolls as evidence. The Trial Court, in its Memorandum Opinion, held that it denied Plaintiff recovery for this claim because Plaintiff failed to comply with provisions of the Policy, including the requirement that Defendant be provided with documentation, and because the proof established that the rent rolls were inaccurate. As with the issue of recovery for replacement cost, the Trial Court indicated in its Memorandum Opinion that it relied heavily upon the testimony of Timothy Lind regarding the inaccuracy of the rent rolls. *See Tenn-Tex Prop.,* 778 S.W.2d at 426. We find no error in the Trial Court's decision not to award loss of business income to Plaintiff.

Finally, Defendant argues on appeal that the Trial Court erred in granting prejudgment interest to Plaintiff because the Policy only allows recovery once the repairs are complete. Our Supreme Court recognized that a trial court's award of prejudgment interest "is within [its] sound discretion . . . and the decision will not be disturbed by an appellate court unless the record reveals

-8-

a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998); Tenn. Code Ann. § 47-14-123. The *Myint* court discussed the review on appeal of an award of prejudgment interest as follows:

> This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found.

*Myint,* 970 S.W.2d at 927.

As discussed, under the terms of the Policy, Plaintiff's recovery of replacement cost was conditioned, in part, upon the completion of repairs to Building "A." *See E.K. Hardison Seed Co.*, 410 S.W.2d at 658. The record on appeal shows that it was disputed as to whether Building "A" was completely repaired even at the time of trial. Assuming, as Plaintiff contends and the record supports, that the repairs were completed by trial, Plaintiff was not entitled to receive the replacement cost until then. The basis of Plaintiff's recovery for prejudgment interest is the award of replacement cost. The money was not owed and due until the repairs were completed which was not until the time of trial. Under the Policy, Plaintiff was not legally entitled to the funds and, therefore, not entitled to the use of those funds until the repairs were completed. *See Myint*, 970 S.W.2d at 927. We hold, therefore, that the Trial Court erred in granting prejudgment interest to Plaintiff.

## CONCLUSION

The judgment of the Trial Court granting prejudgment interest to Plaintiff is reversed. All other aspects of the Trial Court's judgment are affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed one-half to Roy Michael Malone, Sr., and his surety, and one-half to Harleysville Mutual Insurance Company, and its surety.

_____
D. MICHAEL SWINEY, JUDGE