# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 16, 2011 Session

## ERIC KERNEY, ET AL. v. GARY ENDRES, ET AL.

### Appeal from the Chancery Court for Sullivan County
### No. K0033175     E. G. Moody, Chancellor

---

### No. E2010-02217-COA-R3-CV-FILED-NOVEMBER 7, 2011

---

This case is before us for the second time on appeal. In our first Opinion, *Kerney v. Endres*, No. E2008-01476-COA-R3-CV, 2009 Tenn. App. LEXIS 408 (Tenn. Ct. App. June 30, 2009), *no appl. perm. appeal filed* ("*Kerney I*"), we found and held that defendants' beauty salon violated the restrictive covenants of residential use only, vacated the Trial Court's order to the contrary, and remanded the case for a determination of whether the restrictive covenants had been waived. On remand, the Trial Court entered its order finding and holding, *inter alia*, that the restrictive covenants of residential use only had been waived and were unenforceable. Plaintiffs appeal the finding of waiver to this Court. We find that the evidence preponderates against the Trial Court's finding that the restrictive covenants had been waived. We, therefore, reverse the Trial Court's May 3, 2010 order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

W. Tyler Chastain, Margo J. Maxwell, and Gwendolyn M. Kerney, Knoxville, Tennessee, for the appellants, Eric Kerney and Cassandra Kerney.

Gary Endres and Susan Endres, Kingsport, Tennessee, pro se.

# OPINION

## Background

Eric and Cassandra Kerney ("Plaintiffs") and Gary and Susan Endres ("Defendants") are neighbors who live at the cul-de-sac end of Coralwood Drive in the Plantation Manor Subdivision in Kingsport, Tennessee. In addition to residing on their property, Defendants operate a beauty salon called "California Cuts" in their house on their property.

Plaintiffs sued Defendants alleging that Defendants were in violation of the restrictive covenants of residential use only. The case was tried without a jury[1]. Mr. Kerney testified at trial that he and his family moved into the subdivision in 2004. When asked if he was aware of any businesses in the neighborhood other than Defendants', Mr. Kerney stated: "I was not aware of any businesses until this trial came about…. There are no to and from businesses that I'm aware of where people are coming to and from people's homes." Mr. Kerney testified that a college age individual has a lawn mowing business down the street and another neighbor parks a vending truck at their home. With regard to the neighbor with the vending truck, Mr. Kerney explained: "They do not work out of their home. They park their vehicles there." Mr. Kerney also stated that an accountant operates a business nearby, but that business actually is located in another subdivision.

To Mr. Kerney's knowledge, Defendants were not running their business in their house when he and his family moved in, but started it shortly thereafter. Mr. Kerney testified that he voiced his objections about the beauty salon to Defendants when he first found out about the beauty salon.

When asked, Mr. Kerney testified that his wife does some internet work at home in relation to their business. He stated: "She has access to our server at work. She, you know, would see what goes on daily. Did we receive orders at the plant that day, bookkeeping issues, and etc."

John Mark Masters, who lives two houses down from the cul-de-sac, and across the street from Defendants, testified at trial. Mr. Masters has lived in the subdivision for ten years. When asked if he was aware of any businesses other than Defendants', Mr. Masters stated: "The Camponovo's son across the street has a lawn mowing business that he keeps the lawn mower in the back yard. But that's all that comes to mind immediately."

---

[1]In this Opinion we discuss only the evidence relevant to the issues involved in this appeal.

Michael Peter Jaskoski, whose house is "cattycorner" to Defendants' house, testified that he has lived there for approximately 23 years. Mr. Jaskoski was aware of a young boy up the street who cuts lawns, but was not aware of any other businesses in the subdivision.

Ms. Endres testified that her family has lived in the subdivision for twelve years. She testified that her next-door neighbors, Acie and Star Mullins, run, refurbish, and sell old vending trailers, and operate a jewelry business from their home. Ms. Endres also testified that Joey Camponovo does landscaping and lawn care, and another neighbor, Michael Peters, gives swimming lessons and has every summer for the last six years. Ms. Endres testified about the swimming lessons stating: "Right next to [Plaintiffs'] is - - well, he's actually my daughter's best friend all through high school and he runs swimming lessons every summer for about eight weeks solid, about 20 kids or so. And I even - - I believe [Plaintiffs] even have their daughter over there for lessons." Ms. Endres admitted that Michael Peters was a high school student when he started giving the lessons.

Ms. Endres also testified about past businesses in the subdivision. She stated that the Papugas had a daycare, but admitted that they moved out in approximately 2003. Ms. Endres also testified that when she started her business there was an automobile detailing business, but she admitted that this business has since moved. Ms. Endres further testified that another neighbor ran a daycare for two years around 2002 or 2003.

Pam Sandage, who lives directly behind Defendants, testified that she has lived there approximately twenty-one years. Ms. Sandage's home is in different subdivision than the subdivision where Plaintiffs and Defendants live. Ms. Sandage testified that she has known Susan Endres "[f]or as long as they've lived there." Ms. Endres does hair for the Sandage boys. Ms. Sandage's oldest son is Defendants' son's best friend. Ms. Endres also has done Mr. Sandage's hair. Ms. Sandage was asked if she knew Plaintiffs, and her response was "[u]nfortunately."

When asked if she is aware of any businesses on Coralwood Drive, Ms. Sandage stated:

> The Mullins on the end of the street have a vending business that refurbishes vending trucks to sell. They also sell jewelry. The Papugas that live across from the Endres ran a daycare. Tony Evans had an automotive body shop. Michael Peters runs a swimming - - gives swimming lessons all summer long. The Camponovos have a landscaping and mowing out of their house. And the Holts have a CPA business.

When asked further, Ms. Sandage admitted that the Evans' business is no longer there and the Papugas' business is no longer there.

After a trial, the Trial Court entered its order on June 5, 2008 finding and holding, *inter alia*, that the use of Defendants' property as a beauty shop for commercial purposes was incidental to Defendants' use of it for residential purposes, but that a significant change in Defendants' business would violate the restrictive covenants. The Trial Court's June 5, 2008 order enjoined Defendants from expanding the beauty shop business.

Plaintiffs appealed the Trial Court's June 5, 2008 order and this Court found that Defendants' beauty salon violated the restrictive covenants, vacated the Trial Court's order, and remanded the case for a determination of whether the restrictive covenants had been waived. Upon remand, the Trial Court entered its order on May 3, 2010 finding and holding, *inter alia*:

> Ms[.] Endres testified that an auto detailing business was operated on tax parcel 46 for two or three years; that a daycare business was operated on tax parcel 47 for two years; that a jewelry and vending related business has been operating on tax parcel 48 for several years; that the Endres's beauty shop business is located on tax parcel 49; that the Plaintiff, Cassandra Kerney, conducts an internet related business on tax parcel 50; that a swimming instruction business has been operating on tax parcel 51 seasonally for six years and that a landscaping and lawn[-]care business has been operating on tax parcel 52 for several years. The Court finds that Ms. Endres' testimony was corroborated by a neighbor, Pam Sandage, and the Court finds that Ms. Endres' testimony was credible. The Plaintiff, Eric Kerney, admitted he knew about the lawn[-]mowing, vending and accounting businesses. He also admitted that his wife conducted an internet business in their home.

> The Court finds that the character of the neighborhood has changed to the extent that it has resulted in a waiver and/or an abandonment of the restrictive covenant of "residential use only" in view of the commercial use of all six tax parcels (46, 47, 48, 50, 51, and 52) surrounding the Defendants' tax parcel 49, including the Plaintiffs', and that the violations were not "sporadic and distant" and that the waiver and/or abandonment rose to a level of "community acquiescence".

Plaintiffs filed a motion to alter or amend or for a new trial, which the Trial Court denied. Plaintiffs appeal to this Court.

**Discussion**

Although not stated exactly as such, Plaintiffs raise three issues on appeal: 1) whether the Trial Court erred in not holding a new trial upon remand; 2) whether the Trial Court erred in finding and holding that the restrictive covenants were unenforceable when all the other property owners in the subdivision were not made parties to the suit; and 3) whether the Trial Court erred in finding and holding that the restrictive covenants were unenforceable due to waiver or abandonment.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in not holding a new trial upon remand. In *Kerney 1*, this Court discussed the fact that the Trial Court had not ruled on the issue of waiver and explained:

> We will now address the trial court's comment that the testimony indicated "the character of the neighborhood has changed." We do so in light of the court's determination that "it is not necessary to rule on this issue." Defendants assert that "[i]f this Court were to reverse the Trial Court on the issue of incidental use, then this Court would have to remand the case to the Trial Court for its determination on the waiver issue." Plaintiffs argue that this Court should either refuse to consider the issue or treat the trial court's comment as an erroneous factual finding. On this point, we must agree with the defendants.
>
> Abandonment of the restrictive covenant was clearly pleaded in paragraph 5 of the answer, and evidence was presented that several other businesses operated in the neighborhood. The trial court's comments indicate that abandonment or waiver was a viable issue in the case, but the court stopped short of a complete analysis upon determining another issue that it saw as dispositive. A complete analysis would have included, at least, further consideration of whether or not the alleged violations rose to the level of "community acquiescence." *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994). Sporadic violations do not prove community waiver or abandonment. *Id.* The violations must be so pervasive "as to

-5-

frustrate the object of the scheme with the result that enforcement of the restriction involved would seriously impair the value of the burdened lot without substantially benefiting the adjoining lots." *Id*. Whether there has been a waiver or abandonment of the restriction is a fact question. *Taylor v. Burleson*, 2002 Tenn. App. LEXIS 595, 2002 WL 1870269 (Tenn. Ct. App., E.S., filed August 15, 2002). We decline plaintiffs' invitation to decide this fact question before the trial court has that opportunity. *See Zaharias v. Vassis*, 789 S.W.2d 906, 911 (Tenn. Ct. App. 1989) (factual issues should be determined first at trial level).

*Kerney 1*, at **14-16.

A portion of Plaintiffs' argument on this issue concerns the assertion that the parties attempted to resolve the issue but were unable to reach an agreement. Plaintiffs appear to suggest that the Trial Court erred in not allowing them a further hearing after the parties were unable to reach an agreement. As proof already had been presented on the issue, as discussed above, no further hearing was required. We find no error in the Trial Court's allowing the parties time to attempt to reach a resolution prior to the Trial Court entering an order, and no error in the Trial Court's entry of an order after the parties were unable to reach a settlement.

As we noted in *Kerney 1*, the issue of waiver or abandonment was pled and tried and the Trial Court simply had pretermitted making findings on this issue. As the issue had been tried and just not decided, it was unnecessary to re-try the issue upon remand. As such, we find this issue to be without merit.

We next consider whether the Trial Court erred in finding and holding that the restrictive covenants were unenforceable when all the other property owners in the subdivision were not made parties to the suit. To begin, we note that this issue was not raised until the instant appeal was filed.

As pertinent to this issue, Tenn. R. Civ. P. 12.08 provides:

**12.08. Waiver of Defenses.** – A party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, (provided, however, the defenses enumerated in 12.02(2), (3), (4) and (5) shall not be raised by amendment), except (1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, … may also be made by a later pleading,

if one is permitted, or by motion for judgment on the pleadings or at the trial
on the merits, ….

Tenn. R. Civ. P. 12.08. As this Court succinctly stated in *Griswold v. Income Prop., II*:
"failure to join an interested or indispensable party must be raised no later than a trial on the
merits." *Griswold v. Income Prop., II*, 880 S.W.2d 672, 678 (Tenn. Ct. App. 1993). Because
the issue of whether or not other property owners in the subdivision should be made parties
to the suit was not raised until well after the trial on the merits, the issue was waived.

We now consider whether the Trial Court erred in finding and holding that the
restrictive covenants were unenforceable due to waiver or abandonment. As discussed
above, this Court noted in *Kerney I*, that a determination of this issue involved:

> consideration of whether or not the alleged violations rose to the level of
> "community acquiescence." *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d
> 342, 349 (Tenn. Ct. App. 1994). Sporadic violations do not prove community
> waiver or abandonment. *Id.* The violations must be so pervasive "as to
> frustrate the object of the scheme with the result that enforcement of the
> restriction involved would seriously impair the value of the burdened lot
> without substantially benefiting the adjoining lots." *Id*.

*Kerney I*, at **15-16.

Although the Trial Court found commercial use of six surrounding parcels, the
evidence in the record on appeal reveals that the alleged commercial uses included two high
school or college age individuals who mowed lawns or gave swimming lessons, a neighbor
who parked work-related vending trucks at their property, and three past businesses, i.e., an
automobile detailing business and two day-cares, all three of which closed some time ago.
In fact, Ms. Endres herself testified that both of the day-cares closed and moved prior to
Plaintiffs moving into the subdivision.

Given the evidence in the record now before us, we do not agree that the young
individuals who mow lawns or give swimming lessons qualify as commercial businesses
which would be violations of the restrictive covenants "so pervasive 'as to frustrate the object
of the scheme with the result that enforcement of the restriction involved would seriously
impair the value of the burdened lot without substantially benefiting the adjoining lots.'" *Id.*
Nor do we agree that a neighbor who parks a work-related vehicle in a driveway meets this
standard. Furthermore, the other neighbors from the subdivision, i.e., Mr. Masters and Mr.
Jaskoski, were completely unaware of any businesses in the neighborhood other than
Defendants' beauty shop, and the young man who mows lawns. Even taking into account

the fact that the Trial Court found Ms. Endres to be credible, the testimony given by Ms. Endres simply does not support a finding of violations sufficient to support a finding of waiver because they were "so pervasive 'as to frustrate the object of the scheme with the result that enforcement of the restriction involved would seriously impair the value of the burdened lot without substantially benefiting the adjoining lots.'" *Id.* The preponderance of the evidence in the record shows sporadic and non-pervasive violations, at best, which are insufficient to prove community waiver or abandonment.

We also will address the Trial Court's finding that "Plaintiff, Cassandra Kerney, conducts an internet related business on tax parcel 50...." In their brief on appeal, with regard to this specific finding Defendants argue:

> Plaintiffs, themselves, conducted commercial aspects of their own Internet tax business at their home. While Plaintiffs are quick to argue such activity is not relevant compared to the other neighborhood home-based businesses, the fact is "any commercial undertaking" means just that. In this 21st century of cell phones, personal computers, Internet, Ebay and other technology, use of homes for business purposes and commercial undertakings is the norm and not the exception. They can easily involve amounts of money far greater than the profits of a one-chair beautician enterprise. This "outside change" to our society impacted and continues to impact the neighborhood at issue and our whole nation, and should be considered in conjunction with the several other businesses found by the Trial Court to exist.

First, we are unclear as to how the Trial Court reached its finding that "Plaintiff, Cassandra Kerney, conducts an internet related business on tax parcel 50 ...." The evidence in the record on appeal shows only that Mr. Kerney is the self-employed owner of a manufacturing company, which does such things as cut glass and manufacture wooden shipping containers. Mr. Kerney's business is located in Orebank, not in his home. When asked if he did any work related to his business at home, Mr. Kerney stated that he did not, but that his wife would use their home internet for "access to our server at work. She, you know, would see what goes on daily. Did we receive orders at the plant that day, bookkeeping issues, and etc."

We fail to see how this evidence that Mrs. Kerney uses their home internet connection to look-up work related matters translates into conducting an internet related business from the home. The evidence in the record on appeal simply does not support a finding that Mrs. Kerney conducts an internet related business on Plaintiffs' property.

If we held as Defendants urge us to, then anyone who had a work-related

telephone conversation on their cell phone while at home, or brought work-related papers home to read during the evening or weekend, or used their home computer to look-up anything work-related would be in violation of restrictive covenants for residential use only. Such a holding would be untenable, at best. Adoption of Defendants' position would mean that most, if not all, restrictive convenants for residential use only in Tennessee would no longer be enforceable. We find Defendants' position on this issue to be without merit.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, Gary Endres and Susan Endres.

_____
D. MICHAEL SWINEY, JUDGE