IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
JULY 18, 2006 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. DANIEL R. HOWARD

## IN THE MATTER OF: W.A.H. & A.N.H.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-1866-3     D. J. Alissandratos, Chancellor**

_____

**No. W2006-00585-COA-R3-PT - Filed August 8, 2006**

_____

This case stems from a petition to terminate a father's parental rights. At trial, the chancery court terminated the father's parental rights as to his two minor children finding that grounds for terminating the father's parental rights existed under sections 36-1-113(g)(1) and 36-1-113(g)(3) of the Tennessee Code by clear and convincing evidence and that it was in the best interest of the children to terminate the father's parental rights. On appeal, the State of Tennessee, Department of Children's Services concedes that there was not clear and convincing evidence to support a finding that grounds for terminating the father's parental rights under section 36-1-113(g)(1) existed. However, it asserts on appeal that father's narcissistic personality disorder was sufficient evidence to support a finding that the grounds for terminating the father's parental rights pursuant to section 36-1-113(g)(3) of the Tennessee Code existed. On appeal, the father asserts that the Department of Children's Services failed to make reasonable efforts to reunite his family, and thus, his parental rights may not be terminated as yet under section 36-1-113(g)(3). We reverse.

**Tenn. R. App. P. 3.; Appeal as of Right; Judgment of the Chancery Court Reversed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Mitchell D. Moskovitz, Zachary M. Moore, Memphis, TN, for Appellant

Paul G. Summers, Attorney General and Reporter; Elizabeth C. Driver, Assistant Attorney General, Nashville, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On May 19, 1999, Daniel R. Howard ("Father") left his two minor children, A.N.H. and W.A.H.,[1] in the care of his now former stepdaughter, Ms. Tesa Digges ("Digges"). On May 21, 1999, Father was arrested as his employer had reported the company tractor-trailer that Father drove and the cargo that Father was hauling as stolen. According to Father, he was released from jail four days later; during the time he was incarcerated, Digges took A.N.H. and W.A.H. to juvenile court; thereafter, the children were sent to the Tennessee Department of Children's Services ("DCS"); upon his release from jail, Father attempted to retrieve his children from DCS; and DCS informed Father that he would have to petition the court to regain custody of the children.

On May 26, 1999, a protective order was filed against Father. That same day, DCS filed a dependency and neglect petition. On August 6, 1999, the juvenile court referee found A.N.H. and W.A.H. dependent and neglected. In that order, the juvenile court referee ordered a home study of the children's paternal grandparents' home in Rosston, AR. Nothing in the record indicates that this study was completed. On July 15, 2001, the juvenile court referee ordered a home study of Father's residence. Nothing in the record demonstrates that DCS completed this home study either. On August 31, 2001, Father was awarded supervised visitation with the children. Eight days later, DCS filed a petition to terminate Father's parental rights in chancery court. The petition also sought to terminate the parental rights of A.N.H.'s and W.A.H.'s mother.

On January 9, 2006, the chancery court conducted a hearing on DCS' petition to terminate Father's parental rights. At that hearing, Dr. Earle Donelson ("Dr. Donelson") testified as to Father's mental condition, stating that Father suffered from a narcissistic personality disorder. Dr. Donelson's psychological report of Father was also submitted to the court. In that report, Dr. Donelson recommended that Father needed to undergo intense psychotherapy sessions although the outlook looked poor for his recovery. Nothing in the record illustrates that DCS made any effort to offer services to help treat Father's narcissistic personality disorder.

In its final order, the chancery court found that grounds existed for the termination of Father's parental rights pursuant to sections 36-1-113(g)(1) and 36-1-113(g)(3) of the Tennessee Code. The chancery court stated that it found that (1) Father had abandoned his children; (2) Father had willfully failed to pay child support to DCS; (3) the conditions which led to the children's removal still persist, as well as other conditions which, in all reasonable probability, would cause the children to be subjected to further abuse or neglect and preclude the children's safe return presently or in the foreseeable future; and (4) the continuation of the parent/child relationship between the children and Father would seriously impede the children's chances of early integration into a safe, stable and permanent home. The court also found that it was in the children's best interests to terminate

---

[1] Consistent with this Court's policy, we refer to children in sensitive cases by their initials.

Father's parental rights. The parental rights of the children's mother were not terminated as there was no service of process as to her.

## II. ISSUE PRESENTED

Appellant has timely filed his notice of appeal and presents the following issue for review:
1.      Whether the chancery court erred when it terminated Appellant's parental rights.
For the following reasons, we reverse the decision of the chancery court.

## III. Discussion

On appeal, Appellant has contended that the chancery court erred when it terminated his parental rights with regards to A.N.H. and W.A.H. As we have previously stated,

> "[t]ermination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and the child involved 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(l)(1) (2003)). Both the United States Constitution and the Tennessee Constitution recognize a parent's fundamental right to the care, custody, and control of his/her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky*, 455 U.S. at 769).
>
> "Termination proceedings in Tennessee are governed by statute." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). The legislature has set forth certain enumerated grounds which, if proven, will warrant the termination of parental rights. *See* Tenn. Code Ann. § 36-1-113(g) (2003). Under our statutory scheme, a trial court's decision to terminate a parent's parental rights to a minor child must be based upon a finding that the grounds for termination have been proven by clear and convincing evidence and that terminating parental rights to the minor child are in the child's best interest. Tenn. Code Ann. § 36-1-113(c) (2003). Clear and convincing evidence establishing the existence of any one of the statutorily enumerated grounds will support a decision to terminate a parent's parental rights. *See In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). In the order terminating parental rights, the trial court must also make specific findings of fact and conclusions of law justifying

its decision. Tenn. Code Ann. § 36-1-113(k) (2003); *see also In re M.J.B.*, 140 S.W.3d at 654.

The heightened standard of proof applied to parental termination proceedings ensures the unwarranted termination or interference with a parent's constitutionally protected rights regarding a minor child. *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). This Court has previously framed the clear and convincing evidence standard in the following terms:

> Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. App. 1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 438, 441 (Tenn. App. 1981); *Brandon v. Wright*, 838 S.W.2d at 536.

*In re C.W.W.*, 37 S.W.3d at 474; *see also Scott v. Means*, 130 S.W.3d 48, 54-55 (Tenn. Ct. App. 2003).

In reviewing a trial court's decision to terminate the parental rights of parent to a minor child, this Court applies the following standard to a trial court's findings of fact:

> Because of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), we must adapt Tenn. R. App. P. 13(d)'s customary standard of

review for cases of this sort. First, we must review the trial court's specific findings of fact *de novo* in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d 835 at 838; *In re Valentine*, 79 S.W.3d at 548-49; *In re Adoption of Muir*, 2003 Tenn. App. LEXIS 831, 2003 WL 22794524, at *2; *In re Z.J.S.*, 2003 Tenn. App. LEXIS 415, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *10 (Tenn. Ct. App. June 3, 2003) (No Tenn. R. App. P. 11 application filed); *Ray v. Ray*, 83 S.W.3d 726 at 733; *In re L.S.W.*, 2001 Tenn. App. LEXIS 659, No. M2000-01935-COA-R3-JV, 2001 WL 1013079, at *5 (Tenn. Ct. App. Sept. 6, 2001), perm. app. denied (Tenn. Dec. 27, 2001).

*In re M.J.B.*, 140 S.W.3d at 654. "We review all issues of law *de novo* upon the record with no presumption of correctness." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Due to the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). To that end, we are mindful that in cases of this nature a significant portion of the proof presented at trial consists of testimonial evidence. As such, we must also take account of the following principle which guides our review of a trial court's findings of fact:

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971

S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics. Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

***In re M.A.R.***,  183 S.W.3d 652, 659-61 (Tenn. Ct. App. 2005).

In its order terminating Father's parental rights, the chancery court stated that it found that grounds existed by clear and convincing evidence to terminate Father's parental rights pursuant to sections 36-1-113(g)(1) and (g)(3) and that it was in the children's best interests that Father's parental rights be terminated.  Section 36-1-113 of the Tennessee Code states in pertinent part:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
> (1)   Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> . . .
>
> (3) (A)  The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i)  The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii)  There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii)  The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. §§ 36-1-113(g)(1), (3) (2005).

On appeal, DCS concedes that there is not clear and convincing evidence to support terminating Father's parental rights pursuant to section 36-1-113(g)(1).  Thus, our analysis turns on whether there is clear and convincing evidence to support a finding that the grounds under section 36-1-113(g)(3) were met.  On appeal, DCS contends that there is clear and convincing evidence that conditions other than the conditions that led to the children's removal exist that would subject the

children to further abuse or neglect. Specifically, DCS asserts that Father's narcissistic personality disorder prevents the reuniting of Father with his children. Father asserts that DCS failed to provide reasonable efforts to reunite his family.

"The success of a parent's remedial efforts generally depends on the Department's assistance and support." *In re Georgianna S.*, M2005-01697-COA-R3-PT, 2006 Tenn. App. LEXIS 192, at *22 (Tenn. Ct. App. Mar. 21, 2006) (citing *In re C.M.M.*, 2004 Tenn. App. LEXIS 160, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. Mar. 9, 2004)) (no. perm. app. filed). Pursuant to section 37-1-166 of the Tennessee Code, with certain exceptions, DCS must make reasonable efforts to reunite a family or make it possible for the children to return home. Tenn. Code Ann. § 37-1-166 (2005). Those exceptions include:

> (4) Reasonable efforts of the type described in subdivision (g)(2) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that:
> (A) The parent has subjected the child that is the subject of the petition or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home to aggravated circumstances as defined in § 36-1-102;[2]

---

[2] Section 36-1-102 defines "[a]ggravated circumstances" as "abandonment, abandonment of an infant, aggravated assault, aggravated kidnapping, especially aggravated kidnapping, aggravated child abuse and neglect, aggravated sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated rape, rape, rape of a child, incest, or severe child abuse, as defined at § 37-1-102." Tenn. Code Ann. § 36-1-102(9) (2005). Abandonment under this definition means :

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;
> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

(continued...)

(B) As set out in § 36-1-113, the parent has:

(i) Committed murder of any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home;

(ii) Committed voluntary manslaughter of any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home;

(iii) Aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter of the child or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home; or

(iv) Committed a felony assault that results in serious bodily injury to the child or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home; or

(C) The parental rights of the parent to a sibling or half-sibling have been terminated involuntarily;

Tenn. Code Ann. § 37-1-166(g)(4). "Because of this obligation, [DCS] must not only establish each of the elements in Tenn. Code Ann. § 36-1-113(g)(3)(A), it must also establish by clear and convincing evidence that it made reasonable efforts to reunite the family and that these efforts were

---

[2](...continued)

   (iii) A biological or legal father has either willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child; provided, that in no instance shall a final order terminating the parental rights of a parent as determined pursuant to this subdivision (iii) be entered until at least thirty (30) days have elapsed since the date of the child's birth;

   (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

   (v) The child, as a newborn infant aged seventy-two (72) hours or less, was voluntarily left at a facility by such infant's mother pursuant to § 68-11-255; and, for a period of thirty (30) days after the date of voluntary delivery, the mother failed to visit or seek contact with the infant; and, for a period of thirty (30) days after notice was given under § 36-1-142(e), and no less than ninety (90) days cumulatively, the mother failed to seek contact with the infant through the department or to revoke her voluntary delivery of the infant;

Tenn. Code Ann. § 36-1-102(1)(A) (2005).

to no avail." ***In re Georgianna S.***, 2006 Tenn. App. LEXIS 192, at *22-23 (citing *In re C.M.M.*, 2004 Tenn. App. LEXIS 160, 2004 WL 438326, at *7).

At the hearing on DCS' motion to terminate Father's parental rights, Dr. Donelson testified as to Father's narcissistic personality disorder and as to Father's fitness to be a parent. However, nothing in the record indicates that DCS attempted to provide any services to Father to help him overcome his narcissistic personality disorder so that he would be in a position to properly care for his children.

A similar issue was recently decided by the Eastern Section of this Court in ***State of Tennessee, Department of Children's Services v. S.V.***, No. E2006-00686-COA-R3-PT, 2006 Tenn. App. LEXIS 462 (Tenn. Ct. App. July 6, 2006). In that case, the Department of Children's Services attempted to terminate the rights of a mother as to her children. ***Id.*** at *3. Mother was diagnosed with a narcissistic personality disorder. ***Id.*** at *11. The Department of Children's Services failed to inform the mother of this disorder and failed to provide services to the mother to assist her in obtaining the necessary treatment. ***Id.*** at *29-30. Based on this failure, the court reversed the decision of the juvenile court stating that it would be premature at this point to terminate the mother's parental rights. ***Id.*** at *30.

Likewise, Father has been diagnosed as having a narcissistic personality disorder. As stated earlier, nothing in the record indicates that DCS made any reasonable efforts to assist Father in obtaining appropriate medical care. Although Dr. Donelson noted in his evaluation of Father that Father's attitude toward DCS and his overall demeanor would likely render any treatment's success very poor, it does not excuse DCS from its statutory obligations to make reasonable efforts to reunite Father with his children.

In addition to failing to provide services to Father to treat his personality disorder, nothing in the record indicates that DCS conducted a home study of the paternal grandparents' home in Rosston, AR or a home study of the Father's residence as required by the Shelby County Juvenile Court referee's orders. As such, it appears to be premature to terminate Father's parental rights. Accordingly, we reverse the decision of the chancery court.

## IV.  CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court. Costs of this appeal are taxed to the State of Tennessee, Department of Children's Services, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE